The opinion of the court was delivered by
Breaux, J.
The plaintiff sued the defendant to recover damages for killing his son James, at the upper crossing of Soraparu street, *1377 on the night of Sunday, July 7, 1895, at 9 o’clock. The boy was 6 years and 11 months old.
The plaintiff says that his son was standing on the car track, plainly within view; the car moved slowly down, the projecting fender struck him and threw him across the fender frame, and from it, by the car’s motion, he was thrown to the track; the fender passed over him and forced his body under the cars, causing almost instant death; that the motorman of defendant’s car knew nothing of the accident until some one near from the street shouted to him that there was a child under the car.
That the motorman did cut off the power and applied the brakes, stopping the car within twenty feet from the point at which he thus applied the brakes.
The complaint further is, had the motorman looked down the street he could have seen the child in time to prevent the accident; that he was not watchful and attentive; that he failed to ring the gong.
The defendant denies that its employee was guilty of negligence. 'The jury found a verdict for plaintiff in the sum of fifteen hundred dollars.
From the verdict and judgement the defendant appeals.
This is another of the sad accidents, the cause of which this court is called upon to investigate and to familiarize itself with, in order to determine if damages are due.
The questions are principally of facts and no controversy in regard to the law arose in argument at the bar.
We take up the review of the facts (the incidents as they happened) according to the order of time. The gong was sounded and the alarm given as the car came down Chippewa, approaching the corner of Soraparu street. The motorman and the conductor were at their respective places, and the former had the electric power and the car brakes under his control.
We set forth the details of the occurrence as near the language of the witnesses, as possible, in view of the fact that some brevity and conciseness are required.
WITNESSES FOR THE PLAINTIFF.
The first who says he saw the accident, the witness Hyland, was about three-fourths of the way on Chippewa, walking up from *1378 Philip toward Soraparu street. The boy was standing on the uptown side of Soraparu street, near the track, the car descending, at the time was about one hundred feet from the corner. He says: “He was close to the track. I could not state positively whether he was on the track or in the middle of the track or not. I know he was between the banquette and the track. He was in that neighborhood close to the track.”
“ Q. Do you know that he jumped on the track?
“ A. I don’t know whether he did or not.”
Again he states: “ Saw the child moving, could not state positively in what direction.
“ He may have run across before my attention was directed to him.” He says he was struck by the fender.
The companion of this witness, Murphy, who was walking and talking with him at the time, can’t say whether the boy was standing on the car track, between the rails, or near the car track. The first witness, Hyland (with whom he [Murphy] was, as just stated) , said nothing to him, although he, Hyland, says he saw the boy as he was struck by the fender and dragged.
This last witness, Murphy, states that he had no intimation that anything had happened before he saw the car stop and everybody run to it.
Another witness, Mrs. Nelson, saw the little boy standing on. the little bridge over the small gutter, and afterward saw the fender strike him.
WITNESSES POR THE DEPENDANT.
About the only 'testimony of any value of the first witness is, that she heard the car bell ringing the alarm at the moment of the accident.
The second witness was sitting about thirty feet from the place of the accident, and was looking in the direction to which the child was running. He thought the child had collided with the side of the car. Upon discovering that he had not, he gave the alarm; the car was stopped within twenty feet, and the child’s body removed from under the car.
He answered: “ Q. Did the bell of the car ring before it got to this corner?
“ A. Yes, sir.
*1379 “ Q. And the motorman couldn’t have seen the child in time to stop the car before the accident?
“A. Surely not.”
Another witness, Miss Birmingham, was talking with Mrs. Nelson and looking in the direction of the accident with Mrs. Nelson, and saw the boy cross over to the track. He appeared to be running after a dog. “He was standing on the Ohippewa street side, and ran in the direction of his home, over toward Annunciation, and then appeared to be knocked down by the fender.”
“ Q,. Did you see the fender knock him down?
“ A. No, sir; I saw him pass the front, and I thought the fender must have knocked him down.”
Again, at another time, while testifying:
“ Q. Was the boy running or walking?
“ A. He was standing until the car came and he ran across.
“ Q. Could the man have seen him?
“A. No, sir; couldn’t have seen him.”
Another witness, Caroun, observed the boy playing between the rails, and at times near the track.
Caire, also a witness, says that the alarm was sounded at the time.
Another witness, Gitz, knows nothing having any bearing upon the issue, save that he heard the ringing of the bell before the car came to the corner.
The motorman and the conductor substantially testify that everything was done to prevent the accident; that the boy darted in front of the car, and that the motorman quickly stopped the car.
After as careful and close an analysis of the evidence as it was possible for us to make, we think that the weight of the testimony is with the defendant.
Plaintiff’s theory that the little boy was standing on the track, between the rails, and that the motorman ought to have seen him, is not sustained by the evidence of his own witnesses; they do not testify, with any degree of certainty, where he was just preceding the accident. The witnesses for the defendant agree in stating that he was not on the track, and that the accident was occasioned by the sudden act of the child.
Granted as contended by the plaintiff that the motorman did not see the child before he was knocked down by the fender: if the child *1380 had escaped his attention, because of his sudden and unanticipated act itself, it becomes evident that the defendant is not liable. Whether he was seen or was not seen by the motorman would not render the defendant responsible, if owing to thoughtless impulse of the child he brought about the accident by a sudden act which could not be foreseen or guarded against by the motorman or any one else in charge of the car.
This brings us to the question of contributory negligence. Courts are averse to finding children guilty of contributory negligence, and are readily and properly inclined to disregard the thoughtlessness natural to boyhood, but accidents may happen for which the unconscious agent may not be responsible.
The fact that a child may not be capable of contributory negligence does not always render a defendant liable upon the mere proof of the injury. The test is negligence vel non. If the defendant or the defendant’s agent or employee was not negligent, it is not liable.
The only alternative, after the conclusion reached, is to set aside the verdict.
The verdict and judgment are reversed, annulled and avoided.
The demand of plaintiff is rejected and his action dismissed at his cost in both courts.