# CHARLESTON.

## Uthermohlen v. Bogg's Run Company.

Submitted June 20, 1901.   Decided December 7, 1901.

1. Land Owner—*Trespasser—Wanton Injury.*
    A land owner is under no duty to a mere trespasser to keep
    his premises safe, and the fact that the trespasser is a child
    does not raise a duty where none otherwise exists.   Such a
    trespasser, injured on such premises, cannot recover damages
    of the land owner by reason of the unsafe condition of the prem-
    ises, unless the land owner be guilty of negligence as to amount
    to wanton injury.   (p. 459).

2. Operation of Mines—*Not Liable for Injury.*
    One who in the operation of his coal mines upon his own land
    uses a cable running upon pulleys to haul coal cars from his
    mine is not liable for injury to a child trespassing on the prem-
    ises and receiving injury from such cable and pulleys.   (p.
    462).

3. DISCRETION OF TRIAL JUDGE—*Will not be Reviewed by Appellate Court.*

   The examination of an infant witness as to his competency must be left necessarily to the discretion of the trial judge, and this discretion will not be reviewed by an appellate court unless the error of the judge be palpable and plain and amount to an abuse of his discretion. (p. 462).

4. DAMAGES—*Action for Negligence.*

   There must be a duty resting by law on one person to charge him with damage from the negligence of another. No action for negligence will lie without a legal duty broken. (p. 468).

5.     The "Turntable Cases" discussed.

Error to Circuit Court, Ohio County.

Action by Raymond Uthermohlen against the Bogg's Run Mining & Manufacturing Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

HOWARD & HANDLAN, for plaintiff in error.

A. J. CLARKE and HENRY M. RUSSELL, for defendant in error.

BRANNON, PRESIDENT:

Bogg's Run Mining and Manufacturing Company was engaged in mining coal from its land, and in its operations used a cable for hauling its coal cars from its mine to the tipple at the railroad and back to the mine. This cable ran over some pulleys necessary for its operation. Raymond Uthermohlen, a boy between seven and eight years of age, was playing with two other small boys on the premises of the said company, and in some way he was caught by the cable and his leg fastened between the cable and one of those pulleys, and badly injured, and then he brought this action against said company in the circuit court of Ohio County to recover damages for his injuries. The court excluded the plaintiff's evidence as not sufficient to sustain the action and directed a verdict for the defendant. The plaintiff, Uthermohlen, has brought the case to this Court.

I think the principles of law stated in *Ritz* v. *City of Wheeling,* 45 W. Va. 262, decide this case for the defendant, and I do not see that I can now add anything of value to what is there said further than to refer to a few cases decided since the decision of that case. It is a fundamental proposition that on

the basis of negligence there can be no recovery of damages, unless the defendant owed a duty to the party injured, no matter what his damage may be. There must be a breach of duty, at the start. That very late, thorough and valuable work, Thompson's Commentaries on Negligence, Vol. 1, s. 3, says: "An essential ingredient in any conception of negligence is that it involves the violation of a legal duty, which one person owes to another,—the duty to take care, for the safety of the person or property of the other; and the converse proposition is that, where there is no legal duty to exercise care, there can be no actionable negligence. Therefore, it is reasoned that a plaintiff who grounds his action upon the negligence of the defendant, must show not only that the conduct of the defendant was negligent, but also that it was a violation of some duty which the defendant owed to him." The unfortunate little boy was a trespasser upon the premises of the defendant, and the company, therefore, did not owe any duty to him, except to not wantonly or wilfully hurt him. The work just quoted, in s. 945, says: "The owner or occupier of real property is under no obligation to make it safe, or to keep it in any particular condition, for the benefit of trespassers, intruders, mere volunteers, or bare licensees, coming upon it without his invitation express or implied." And in s. 946, we read: "As a general rule the owner of private grounds is under no obligation to keep them in a safe condition for the benefit of trespassers, idlers, intruders, bare licensees, or others who come upon them, not by any invitation, express or implied, but for their own purposes, their pleasure, or to gratify their curiosity, however innocent or laudable their purpose may be." Surely, this is the law as to adults; but it is said that children form an exception, and it is sought in this case to make the defendant liable because of the tender age of the plaintiff. But we find the general rule above stated to be applicable to children as well as adults, as stated in 1 Thompson on Neg. s. 1025, thus: "The general rule undoubtedly is, that the owner or occupier of land is not bound to take pains to prepare his premises in any particular way, to the end of promoting the safety of children who may come thereon as trespassers or as bare licensees; but that, as in the case of adults, they take the premises as they find them, and if they are killed or injured by reason of the condition in which they find them, **this does not give a right to an action for damages.**" Some

courts, in cases of grievous misfortune have departed from these fundamental principles to allow a recovery in violation of the doctrine that where there is no duty broken, there can be no negligence, and that a land-owner in the use for lawful purposes of his property owes no duty of care to a trespasser. I repeat where there is no duty, there is no negligence, and where there is no negligence, there can be no recovery. When once you detract from a man's ownership and lawful dominion and use of his land by holding that in earning a livelihood he must take care to provide for those who come unsolicited upon it, where will you set the bounds of this invasion of this man's rights? Is he to secure his premises for their benefit? It is admitted on all hands that, as a general rule, he is not required to do this; but it is said that there is a notable exception to this general rule in the case of children. Judge Thompson, in s. 1024, Vol. 1, puts it thus: "A well-grounded exception to the foregoing principle is that one who artificially brings or creates upon his own premises any dangerous thing which from its nature has a tendency to attract the childish instinct of children to play with it, is bound, as a mere matter of social duty, to take such reasonable precautions as the circumstances admit of, to the end that they may be protected from injury while so playing with it, or coming in its vicinity. Things of this kind frequently pass under the designation of 'Attractive Nuisances.'" That statement is very broad, as it includes any dangerous thing which in nature has a tendency to attract the childish instincts of children to play with it. It is not confined to machinery. Where do we stop under this head? If machinery, what does it include? In these days of machinery, when it has so largely relieved the hands of man, the rule of dangerous and attractive machinery would be comprehensive. What things would be deemed dangerous under the rule above quoted from Thompson? What machinery would be dangerous? Almost all machinery is, in some conceivable circumstances or contingencies, dangerous. Surely we cannot deny an owner's use of his property by denying to him machinery and appliances that may, under some circumstances, be dangerous. But the thing doing the injury must also be attractive to children. Where do we stop under this head? When we go to say what machinery is attractive to some child, or even to children, we enter upon a wide, uncertain field. Under this rule the owner of land must infallibly

judge in advance what is a machine or appliance both dangerous
and attractive, on pain of suffering heavy damages. What a
constant menace to ownership of real estate! What an infringe-
ment upon dominion over private property! It is, in a sense,
and in no small degree, a taking of private property, because it
detracts from the freedom of its use. If we stick to the bed-rock
principles that a man has the right to ·use his property as he
chooses for lawful purposes and that he owes no duty to use
it in any particular way for the safety of trespassers, we have
a certain fixed guide. It is true that the little boy is injured,
but the owner whose machine injured him was engaged in law-
ful business upon his own premises, and it was farthest from
his intention to hurt the child, and it is only a case of inevitable
accident, which always has befallen, and always will befall,
humanity, and for which no body is answerable.' This is the
only safe rule. The maxim that a man must so use his own
property as not to hurt another extends only to neighbors who .
do not interfere with or enter upon it; the maxim ceases when
the trespasser crosses the·line. *Gillespie* v. *McGowan,* 100 Pa.
St. 150. The doctrine upon which the plaintiff would sustain
his case is that extracted above from Thompson on Negligence,
and is founded upon a number of cases known as the "Turntable
Cases," beginning with *Railroad Co.* v. *Stout,* 17 Wall. 657,
holding that an owner is liable where he uses upon his premises
machinery at once dangerous and attractive to children in places
where children are. likely to go. In the case of *Ritz* v. *City of
Wheeling,* cited, I expressed dissent from the principle an-
nounced in those cases, and stated that they were inconsistent
with ·right of ownership of real estate and the rule that its
owner owed no duty to trespassers, and cited several cases from
eminent courts flatly condemning the rule, with some which,
while following it, expressed a very apparent doubt of it by limit-
ing it to the peculiar circumstances existing in the case of
*Railroad Co.* v. *Stout, supra.* I now add several cases· since
decided disapproving those principles held in the "Turntable
Cases." The supreme court of Georgia in *Savannah, etc. Co.*
v. *Beavers,* 39 S. E. 82, disapproved of the *"Turntable Cases"*
in an exhaustive opinion. In that case the question whether
a land-owner owes a duty to a trespassing child is discussed
with ability by Judge.Fish, and the position is taken that there
is no difference between an adult and a child in this respect,

and the opinion quotes with approval an article in 11 Harvard Law Review, pp. 349, 434, by Judge Smith, ex-justice of the supreme court of New Hampshire, upon the liability of land-owners to children entering without permission. He says: "Are there considerations which do not exist in the case of an adult, and which, when put into the scale, ought to turn the balance in favor of a child? The two prominent arguments are, 1, that the child is innocent; 2, that the child is incapable of protecting itself. What force is to be allowed to these considerations, and do they outweigh the reasons against imposing liability upon the land-owner? Of course, the innocence of a plaintiff does not *per se* establish the fault of a defendant. The land-owner cannot be liable unless he owes to the child a duty which he has neglected. Should the law, in view of the innocence of the child, impose on the land-owner the duty in controversy? No doubt there are cases where a defendant is rightly held liable to a child when he would not be to an adult under similar circumstances. Where it is admitted that a duty exists to use care to avoid harm to both children and adults (*e. g.* in the use of the public highway), then, in point of fact, more care may be required towards the child than towards an adult. In view of the child's helplessness and unconsciousness of danger, more care may, as a matter of fact, be required under the unvarying legal rule of 'due care under the circumstances', just as more care, in fact though not in law, may be required to avoid coliding with an obviously lame or blind adult than with a vigorous man in full possession of all his faculties. But all this is true only where it is admitted that a duty exists. 'In considering the question whether a duty exists, there is no distinction between the case where an infant is injured and one where the injury is to an adult, though where the duty is imposed, the law may exact more vigilence in its discharge as to the former.' (Citing Denman, Judge, in *Dobbins* v. *R. R. Co.,* (Tex. Sup.), 41, S. W. 62, 38 L. R. A. 573). So, if it be conceded that the defendant was negligent, and that his negligence constituted part of the plaintiff's damage, then the incapacity of a child may furnish a good answer to the defence of contributory negligence. Conduct of the plaintiff, which would have been negligent in an adult, may not be in a child. But the fact that the child was not capable of contributory negligence does not necessarily establish that the adult defendant was negligent. It

does not *per se* prove that the defendant owed to the plaintiff
a duty, or that he failed to perform a duty. 'If there was no
breach of duty, then there was no wrong, irrespective of the
boy's capacity to know that what he was doing was dangerous.'
(Citing *Felton* v. *Aubrew,* 20 C. C. A. 436, 74 Fed. 353.) 'The
fact that injury has resulted, and to a child incapable of negli-
gence, will not import the negligence of the defendant, which
is the sole ground of liability.' (Citing *Culbertson* v. *Railroad
Co.,* 48 La. Ann. 1380, 20 So. 902; *Emerson* v. *Peller,* 35 Minn.
481; *Catlett* v. *Railroad Co.,* 57 Ark. 461). Obviously, cases
of the two foregoing classes do not furnish arguments in favor
of creating a duty towards children in situations where no duty
would exist towards adults. Why should innocent children
have greater rights than innocent adults, in respect to damage
resulting from the nature of the premises upon which they enter
without permission? * * * * The test is not whether their
motives were innocent, or even laudable, or whether their
conduct was careful, but whether they entered without the
owner's permission. If so, they cannot claim that the owner
was under a duty to make things safe for their access, or to
give warning of non-apparent danger. (Citing *Morgan* v. *City,*
57 Mc. 375; *Gramlich* v. *Wurst,* 86 Pa. St. 74.) * * * * The
decision turns not upon the presence of fault in the plaintiff,
but in the absence of fault in the defendant. The plaintiff's
action is defeated, not because his own wrong bars a recovery
against the land-owner who has neglected to perform a duty ow-
ing to him, but because he has not succeeded in establishing
the primary proposition that the land-owner owed him the duty
in question. His trespass is not always a negligent act, and
hence does not invariably bar him on the ground of contributory
negligence. (Citing 1 Sher. & R. Neg. (4 Ed.) ss. 97, 98).
Nor does his tort, even when he is a conscious and morally ex-
cusable trespasser, prevent his recovering against the land-owner
for negligently bringing force to bear upon him by a positive act
done after his entry, a negligent act of commission. But when
an adult, who entered without permission, seeks to recover for
harm from the condition of the premises, he fails, though mor-
ally blameless. He may be a technical tort feasor, but recovery
is not denied him by way of punishment for his own wrong. He
fails because the land-owner owed him no duty to have the
premises in safe condition for his entry. Why should the moral

innocence of a childish intruder raise a duty on the part of the land-owner which is not created by the moral innocence of an adult intruder? The youthful innocence of a child does not make restrictions on the right of user less damaging to the owner, or make the alleged duty of preventing entrance of an intruder, or protecting him from harm after entry, less burdensome than in the case of an adult. * * * * The child, it is said, is incapable of protecting itself, and hence it is eloquently contended that the law must impose the duty of protection upon land-owners. The apparent assumption is that all the children in the world are mere waifs and strays, and that the duty of caring for them must be imposed upon the land-owners because the law can find no one else to bear the burden. The fact is, that the vast majority of children have protectors appointed alike by nature and law, their parents, who have legal power to control their actions and whose moral duty to keep their children from entering upon dangerous premises is generally regarded as at least equal to the moral obligation of the land-owner to fence them out. If the child is hurt by the active negligence of the owner in bringing force to bear upon him, it may well be that the negligence of the parent in failing to restrain the child's entrance does not bar the child's recovery for the force brought to bear upon him after his entrance. But it is going far beyond this to say that the child can recover for harm sustained by him through the condition of the premises without the immediate intervention of any human agency. When a child wakes up in the morning in his father's house, the duty of providing a safe play-ground rests upon his parents. Is this duty shifted from the parents to private land-owners because the child chances to escape from the parents' care?

I refer to Judge Fish's opinion in the cited Georgia case as able and full upon this much debated subject.

I will next refer to the New Jersey case of *Delaware, Lackawanna and Western Railroad Co.* v. *Reich,* 61 N. J. Law 635, 41 L. R. A. 831, holding that a land-owner is under no obligations to a mere trespasser to keep his premises in a safe condition, and the fact that the trespasser is an infant of tender years affords no reason for modifying the rule, and charging the land-owner with a duty which does not otherwise exist. I also refer to *Turess* v. *N. Y., Susq. & Co.,* 61 N. J. Law 314, holding that a railroad company maintaining upon its own land a turntable is not liable for injury to a child who comes upon

the land and is hurt while playing with the turntable, and that an invitation to the child will not be implied from the fact that the turntable, obviously designed for another purpose, furnishes a place for playing which is attractive to children. Both these New Jersey cases are cases of turntables. In both of them it is very correctly stated that the principle on which the doctrine of liability rests in the "turntable cases" if sound must be applicable more widely than to railroad companies and their turntables; that it would require a similar rule to be applied to all owners and occupiers of land in respect to any structure, machinery or implement maintained by them, which presented a like attractiveness and furnishes a like temptation to children. "He who erects a tower capable of being climbed, and maintains a wind-mill to pump water; he who leaves his mowing machine or dangerous agricultural implements in his fields; he who maintains a pond in which boys may swim in Summer, or on which they may skate in Winter, would seem to be amenable to this rule of duty. Climbing, playing at work, swimming and skating are attractions almost irresistable to children, and any land-owner or occupier may well believe that such attractions will lead children into danger. Many other cases of like character may be imagined. In all of them the doctrine of the "turntable cases," would charge the land-owner with the duty of taking ordinary care to preserve young children thus tempted on his farm from harm. The fact that the doctrine extends to such a variety of cases, and to cases in respect to which the idea of such a duty is novel and startling, raises a strong suspicion of the correctness of the doctrine, and leads us to question it."

An argument used in support of the "Turntable Cases" is that the owner by having such attractive machinery invites the child to come upon his premises. That is carrying his act very far, to say that when the defendant has a cable and pulleys made upon his land solely for the mining of coal, he thereby invites children. If this is so, owners of land, if they utilize their land, will extend a very wide invitation and risk tremendous danger of liability, and in many, many cases must fail to come up to the required standard, however sincere in their efforts to avert harm to children. They would incur vast additional expenditures in enclosing and guarding their machinery, an expenditure wholly unnecessary except to prepare in advance

for the preservation of children. In this case it is demanded that we say that the defendant company was bound to go to an expense in amount, which we do not know, to box its cables and pulleys, a duty which might render the use, repair and adjustment of its cable and pulleys very inconvenient. The two New Jersey cases just cited take the position, as I take it, that the presence of such machinery upon the owner's premises necessary in the transaction of his lawful business is not an invitation or an allurement to children by such owner for which he is responsible. The doctrine of the "Turntable Cases" shifts the duty of watchfulness and care from the shoulders of parents, where the Creator has placed it, to the shoulders of the landowners using his property to make a living,' and thus materially detracts from the full ownership of property, sacred under our constitution. It is an infringement upon the right of property. I desire also to call attention to the Tennessee case of *Bates* v. *Railway Co.*, 90 Tenn. 36, 25 Am. St. R 665, where it was held that a railroad company need not so fasten its turntables that boys could not unfasten them, and that the company was not required to fasten them any more securely than merely to keep them in their place. In *Dobbins* v. *Railroad Company*, 91 Texas 60 (41 S. W. 62), it is held that the law imposes no greater duty on a land-owner to an infant than to an adult, but where a duty exists, the law may exact more vigilence in the case of an infant. That case very logically criticises the *Stout Case*, 17 Wall. 657, by saying that the Supreme Court of the United States spent its argument in the effort to show that the turntable was left unlocked, and that hence the company was guilty of negligence, seeming to forget that before reaching that question another question arose for decision, namely, whether the company was under any duty to the child. Obviously this criticism was just, since if there was no duty, what mattered it that the turntable was not locked?

But whether the principle of the "Turntable cases" is right or not, a number of courts have said, while following them, that those cases must be limited to the instances before the court,' and that the *Stout Case* must not be extended, but limited to its facts. Those cases will not justify a recovery in this case. There the turntable was idle and unfastened, a circumstance which induced the Supreme Court to find the presence of negligence against the company; whereas in the case before

us the machinery was running in actual use, and there is no element of negligence chargeable to this company, unless you criminate it for having the cable and pulleys upon its premises. The cable and the pulleys were necessary in the company's business and upon its private property. It was not in a public place, as was the turntable in the *Stout Case.* A turntable in town is in a much frequented place, and though private property, the place is used much as a highway, and the company may be held to know that children do and will come upon its premises; but we cannot say the same in this case as to the premises of the defendant. It is suggested that there was a road leading through these premises from the city of Wheeling to a house on the top of the hill owned by the company; but it was a private way used only for the convenience of the company in reaching that house, and in driving a few cows to pasture fields on the hill. That road can exercise no influence in this case. It was a good distance from the pulley which caught the child. It is proven that the company gave no invitation to children to come upon its premises, and that when they did so, they were driven off. It is proven that the unfortunate little boy, Raymond Uthermohlen, and his companions were on the premises near the mine, not near the pulley, a few minutes before the calamity befell him, and they were driven off by an employe of the company, and started to go off the premises, and soon the screams of the little boy were heard. This little boy, as well as others, were uniformly before this accident warned off the premises and told they would get hurt. Thus we can say that the company did not tolerate their presence on the premises, but did everything to keep them off the premises within its power, and preserve them from harm, unless we require the company to fence in its premises or box up its cable and pulleys. The plaintiff's case must rest, in the absence of negligence, upon the theory, and only upon the theory, that the pulleys and cable were things dangerous and attractive to children, and that merely for that cause the plaintiff is entitled to recover. Can we say that such instrumentalities of business prosecuted by an owner upon his own premises are within the rule of dangerous and attractive machinery, even under the principle of the "Turnable cases"? If so, what machinery would not be likewise? What business would not be subject to this constant, imminent danger?

For the reason that no duty was imposed by the law on the

defendant to the plaintiff arising from the operation of the machinery in question, and there can be no negligence imputed by law to the defendant, we think that the court committed no error in directing a verdict for the defendant. *Ketterman* v. *Railroad Co.,* 48 W. Va. 606, (37 S. E. 683) ; *Ritz* v. *Wheeling,* 45 *Id.* 262. It may not be amiss for convenient reference to cite those cases commonly called the "Turntable cases" upholding the liability of railroad companies as to turntables negligently maintained. *Railroad Co.* v. *Stout,* 17 Wall. 657 ; *Keffe* v. *Milwaukee R. R. Co.,* 21 Minn. 207, 18 Am. Rep. 393 ; *Kansas R. R. Co.* v. *Fitzsimmons,* 22 Kan. 686, 31 Am. Rep. 203 ; *Evans-ich* v. *Gulf Co.,* 57 Tex. 126, 44 Am. Rep. 586 ; *Koons* v. *St. Louis R. R. Co.,* 65 Mo. 592 ; *Williams* v. *Kansas, etc. Co.,* 96 Mo. 275 ; *Birds* v. *Gardner,* 19 Conn. 507 ; *Barrett* v. *Southern Pac. R. Co.,* 91 Cal. 296, 27 Pac. 166, 25 Am. St. R. 186.

The plaintiff excepted to the action of the circuit court in excluding as witnesses because of incompetency by reason of infancy the plaintiff, aged nine years at the time of trial, Elmer Crosby, aged ten years, and George Mentz, aged nearly fourteen. The examination of these witnesses on their *voir dire* renders it very doubtful whether they were competent. Some of their answers evince competency. The oldest one said he did not hear what the clerk said in swearing him. He said the clerk asked him what the oath was; otherwise he seemed to have some understanding of an oath. But none of them seemed to have an adequate conception of what an oath meant, its sanctity, solemnity or moral or religious obligation. Under JUDGE DENT's opinion in *State* v. *Michael,* 37 W. Va. 565, they seem to be incompetent, as he said that children might have some knowledge that it is wrong to tell a lie, yet this may be so slight as to produce no decided or lasting impression on their minds, and they may be easily led to regard as truth what others tell them. I do not think these witnesses exhibited enough intelligence to make them amenable for perjury. But there is another strong consideration which forbids this Court from reversing the judgment on this ground. We cannot judge of the real character or degree of intelligence of these witnesses from their mere paper evidence. The judge of the circuit court had a means of decision in this matter not possessed by us, their presence face to face before him, affording him a superior means to judge, of which we are deprived. In almost every case that is the decid-

ing test. In a great majority of cases the decision of the trial court in the matter of the competency of a child, depending as it does, not on age, but on intelligence, must be final, and "it must be a very flagrant case of error to authorize this court to reverse the judgment." *Peterson* v. *State,* 47 Ga. 524. It must be a very strong case to reverse. Whart. on Ev. s. 368. It is a matter of discretion with the trial court, and cannot be reviewed on appeal. *State* v. *Edwards,* 79 N. C. 648; *State* v. *Manuel,* 64 N. C. 601. As just stated, some courts hold that the decision of the trial court is not reviewable. Notes to *State* v. *Michael,* 19 L. R. A. p 610. But the true rule is where the trial court has excluded or admitted a witness in cases of infancy that there can be no reversal, except in a very palpable, unquestionable case of error, amounting to an abuse of discretion. The cases must be very rare in which there can be a reversal for such cause. See *Day* v. *Day,* 56 N. H. 316; *Wade* v. *State,* 50 Ala. 164. But aside from these considerations I am free to say, in addition, that from the nature of this case I cannot conceive how any evidence from these witnesses could have changed the result, and therefore there is no error in this matter aggrieving the plaintiff. Therefore we affirm the judgment.

*Affirmed.*