### HELLER v. NEW YORK, N. H. & H. R. CO.

(Circuit Court of Appeals, Second Circuit. March 2, 1920.)

No. 125.

1. **Negligence** ⊛⟿33 (3)—**No duty in general to protect child trespasser from injury.**

   The mere fact that a trespasser is a child does not create or impose on the owner any duty to keep his premises safe, at least where there is nothing about the premises which is attractive to children; the only duty in such case is that of avoiding willful or wanton injury.

2. **Negligence** ⊛⟿11—**"Reckless" defined; "willful;" "wanton."**

   The word "reckless," as applied to negligence, is the legal equivalent of "willful" or "wanton."

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reckless; Wanton; Willful.]

3. **Electricity** ⊛⟿15 (1)—**Electrocution of boy trespasser climbing on railroad abutment held not actionable.**

   A railroad company, which maintained an electric feed wire alongside its track, 29 inches from an abutment, where it passed under a highway bridge 22 feet above the track, *held* not chargeable with negligence, which rendered it liable for the death of a boy 10 years old, who climbed on the abutment, and through an opening in the wire screen above it, and touched the wire with a tin can; there being no reasonable ground to anticipate such action.

4. **Trespass** ⊛⟿1—**"Trespasser" defined.**

   Every unauthorized entry on another's property is a "trespass," and any person who makes such an entry is a "trespasser," who is one who goes upon the premises of another without invitation, express or implied, and does so out of curiosity, or for his own purposes or convenience, and not in the performance of any duty to the owner; and it is not necessary that one in making such entry should have any unlawful intent.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trespass; Trespasser.]

5. **Negligence** ⊛⟿23 (1)—**"Turntable doctrine" defined.**

   The "turntable doctrine" requires the owner of premises not to attract or lure children into unsuspected danger or great bodily harm, by keeping thereon attractive machinery or dangerous instrumentalities in an exposed and unguarded condition, and where injuries have been received by a child so enticed the entry is not regarded as unlawful, and does not necessarily preclude a recovery of damages; the attractiveness of the machine or structure amounting to an implied invitation to enter.

   [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Turntable.]

---

⊛⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Negligence &=1—Definition.**

> "Negligence" is the omission to take the care which under the circumstances of the particular case a reasonable and prudent person would take.

> [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

In Error to the District Court of the United States for the Southern District of New York.

Action by Benzion Heller, administrator of the estate of Max Heller, deceased, against the New York, New Haven & Hartford Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Olcott, Bonynge, McManus & Ernst, of New York City (Terrence J. McManus and E. L. Bourke, both of New York City, of counsel), for plaintiff in error.

John M. Gibbons, of New York City, for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. This action was brought to recover damages for negligently causing the death of the plaintiff's son, who was about 11 years of age. His death occurred on September 3, 1917. At the close of the case defendant moved to dismiss the complaint, or to direct a verdict for defendant. The motions were denied. The case was submitted to the jury; a verdict being returned in favor of defendant.

The plaintiff alleged that the defendant owned and maintained a certain electric feed wire for the purpose of conducting and supplying electricity for the operation of its railroad trains. This feed wire carried 11,000 volts, and paralleled defendant's tracks at the place where this accident happened in the borough of the Bronx, city of New York. The claim is that this feed wire, together with its surroundings and easy approach, were so negligently and insufficiently protected as to constitute such an invitation to children as the law terms a "lure" or "trap."

The accident happened on defendant's premises, at a place where a bridge crossed defendant's tracks; the bridge being a public highway and about 22 feet above the tracks. The bridge structure rested upon the usual abutments, with sloping concrete walls running from the bridge base east and west, parallel with the tracks and the power wires which operated the defendant's trains. The power wires for construction reasons were placed comparatively close to the sloping abutments east and west of the bridge roadway. The boy was at play with two other boys in the immediate neighborhood of the bridge. At the east of the bridge was an embankment running down to a lot which ran parallel with the railroad tracks. Alongside of the tracks, and separating the lot from the tracks and extending up to the bridge, was a stone abutment, reaching the point where the bridge crossed

the railroad tracks. The abutment ran at right angles to the bridge. A wire screen was over the abutment, and it extended up a number of feet, to where it connected with the bridge. At the top, and at a point parallel with the bridge as it ran along, and not covered by the wire screen, was an opening some 3 or 4 feet in dimensions; and right at the point where the wire fence connected with the bridge there was this hole, extending under the wire fence. There were a number of wires, including the feed wire, running under the bridge and over the tracks. The boy picked up a can, climbed up the abutment, then down into this hole under the screen, finally reached out, and touched with the tin can a heavily charged wire, and the contact with the can and the wire and his holding it resulted in the current being conducted into his body, and he fell over on the wire electrocuted.

[1-4] Every unauthorized entry on another's property is a trespass and any person who makes such an entry is a trespasser. A trespasser is one who goes upon the premises of another without invitation, express or implied, and does so out of curiosity, or for his own purposes or convenience, and not in the performance of any duty to such owner. It is not necessary that one in making such an entry should have any unlawful intent. The plaintiff's intestate was on the defendant's property as a trespasser, unless circumstances, hereinafter mentioned, must be regarded as an invitation to enter. A child, even of tender years, may be a trespasser. Holbrook v. Aldrich, 168 Mass. 15, 46 N. E. 115, 36 L. R. A. 493, 60 Am. St. Rep. 364; Gillespie v. McGowan, 100 Pa. 144, 45 Am. Rep. 365; Thomas v. Chicago, etc., R. Co., 93 Iowa, 248, 61 N. W. 967. The mere fact that a trespasser is a child does not create or impose on the owner any duty to keep his premises safe, at least where there is nothing about the premises which is attractive to children. The only duty in such a case is that of avoiding willful or wanton injury. Rodgers v. Lees, 140 Pa. 475, 21 Atl. 399, 12 L. R. A. 216, 23 Am. St. Rep. 250; Hughes v. Boston, etc., R. Co., 71 N. H. 279, 51 Atl. 1070, 93 Am. St. Rep. 518; Mergenthaler v. Kirby, 79 Md. 182, 28 Atl. 1065, 47 Am. St. Rep. 371; Nolan v. New York, etc., R. Co., 53 Conn. 461, 4 Atl. 106; Delaware, etc., R. Co. v. Reich, 61 N. J. Law, 635, 40 Atl. 682, 41 L. R. A. 831, 68 Am. St. Rep. 727; Uthermohlen v. Boggs Run Co., 50 W. Va. 457, 40 S. E. 410, 55 L. R. A. 911, 88 Am. St. Rep. 884.

It has been held in England that if a child's own act directly brings the injury upon him, while the negligence of the defendant is only such as exposes the child to the possibility of injury, the latter cannot recover damages. Hughes v. Macfie, 2 Hurlst. etc., 744; Managan v. Atterton, L. R. 1 Ex. 239. These decisions, however, have been condemned in England. Clark v. Chambers, L. R. Q. B. Div. 327, 339. See Beven on Negligence (3d Ed.) pp. 161, 163, 166, 170. They are said to be opposed to the current of American cases. Shearman & Redfield on Negligence (6th Ed.) vol. 1, p. 183.

[5] In the United States, in some jurisdictions, though not in all, the courts recognize a duty on the part of the owner of premises to-

wards children not to attract or lure them into unsuspected danger or great bodily harm, by keeping thereon attractive machinery or dangerous instrumentalities in an exposed and unguarded condition. Where a child so enticed upon another's property has been injured by a dangerous machine or structure, which has been suffered to remain exposed upon the premises, the entry is not regarded in such jurisdictions as unlawful, and does not necessarily preclude a recovery of damages, if injury follows. It is there held that the attractiveness of the machine or structure amounts to an implied invitation to enter. This is known as the "doctrine of the turntable cases."

The leading case, announcing it, is that of Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745. In that case the plaintiff, a child of tender years, was attracted to defendant's premises by a turntable on the railroad company's land. He was injured while playing with other children on the turntable, which was ordinarily held secure from movement by a heavy cast iron latch. This latch had been for some time broken, so that the table could be easily turned on its pivot by the children who played on and near it. Judge Dillon, in the court below, instructed the jury that if the railroad company had no reason to anticipate that children would be likely to resort to it, or that they would be likely to be injured if they did resort to it, there was no negligence. The pertinent part of the instruction may be found in the margin.[1]

The Supreme Court held that the case was properly submitted to the jury. And see Union Pacific Railroad Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434; Snare & Triest Co. v. Friedman, 169 Fed. 1, 94 C. C. A. 369, 40 L. R. A. (N. S.) 367; Chesko v. Delaware & Hudson Co., 218 Fed. 804, 134 C. C. A. 492; Callahan v. Eel River, etc., R. Co., 92 Cal. 89, 28 Pac. 104; Ferguson v. Columbus, etc., R. Co., 77 Ga. 102; Union Pacific R. Co. v. Dunden, 37 Kan. 1, 14 Pac. 501; Bransom's Adm'r v. Labrot, 81 Ky. 638, 50 Am. Rep. 193; Westerfield v. Levis, 43 La. Ann. 63, 9 South. 52; Gay v. Essex, etc., R. Co., 159 Mass. 238, 34 N. E. 186, 21 L. R. A. 448, 38 Am. St. Rep. 415; Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154; O'Malley v. St. Paul, etc., R. Co., 43 Minn. 289, 45 N. W. 440; Baltimore, etc., R. Co. v. Schwindling, 101 Pa. 258, 47 Am. Rep. 706; Bridger v. Asheville, etc., R. Co., 25 S. C. 24.

In McAlpin v. Powell, 70 N. Y. 126, 26 Am. Rep. 555 (1877), Judge Miller, referring to Railroad Co. v. Stout, speaks disapprov-

---

[1] "That to maintain the action it must appear by the evidence that the turntable, in the condition, situation, and place where it then was, was a dangerous machine, one which, if unguarded or unlocked, would be likely to cause injury to children; that, if in its construction and the manner in which it was left it was not dangerous in its nature, the defendants were not liable for negligence; that they were further to consider whether, situated as it was on the defendant's property in a small town, somewhat remote from habitations, there was negligence in not anticipating that injury might occur if it was left unlocked or unguarded; that if they did not have reason to anticipate that children would be likely to resort to it, or that they would be likely to be injured if they did resort to it, then there was no negligence."

ingly of it and of the case of Keffe v. Milwaukee, etc., Ry. Co., 21 Minn. 209, 18 Am. Rep. 393, which followed it, saying:

"While we are not prepared to uphold them, it is enough to say that the facts are by no means analogous."

He adds that a wide distinction exists between those cases and the one then before the court.

In the instant case the judge charged the jury at length upon the question as to the duty which the defendant owed to the plaintiff. That portion of the charge is found in the margin.[2] The jury was told that the deceased was a trespasser. In certain jurisdictions the deceased would not be a technical trespasser, if he came upon defend-

[2] "In the next place, the deceased was what in law we call a trespasser at the time of this accident. The accident did not occur upon a public highway, upon a street or a sidewalk, or other public way. It occurred upon property belonging to the defendant company. That is conceded. Hence the boy was a trespasser, and we come to the question of the duty of the railroad company in such a case. A railroad company cannot wilfully injure one who trespasses upon its property, and akin to that rule is the further rule or principle that it cannot invite persons who have no right upon its property to come there by creating alluring conditions with a concealed danger or peril. And one of the primary questions here is whether or not the evidence supports the contention of counsel for the plaintiff that the railroad company created here a lure or trap for the boy. That does not necessarily mean, of course, that with malice or with specific intent the railroad company undertook to injure this particular boy, but the question is, did the defendant company create a condition which constituted a lure for children and in connection with that maintain a concealed or unknown dangerous condition or agency as it is contended this charged wire was in this particular place.

"In that connection, you may consider the location of the bridge under consideration and the wires connected therewith; you may consider the vacant lot adjacent thereto; you may consider the bridge; you may consider the testimony that children were more or less accustomed to play upon the vacant lot and upon the bridge, as bringing home to the railroad company the knowledge of the fact that children played in that general vicinity. Upon the other hand, you may consider the fact that there is no evidence here and it is not contended, as I understand, that other children went to this particular place where the boy was injured. The evidence only goes to the extent of showing that children played upon the vacant lot down below and upon the bridge adjacent to the particular point where the accident occurred; there is no evidence that any other children had either climbed up the wall on the outside, or had climbed down through this opening under the fence.

"I say you will take into consideration all of these circumstances in determining whether or not this was in fact a lure, whether it was a place which would attract children, whether the conditions were such as to charge the railroad company, acting reasonably, acting prudently; that is, in such a way as men ordinarily and reasonably would act with due regard for their own safety and the safety of other people.

"You will consider the nature of this opening or hole, as it is called, and consider the location of this wire, as to whether or not a reasonable man would expect that a child would go upon there (the premises), and do as this boy did, and thus bring himself into contact with the wire and get the current therefrom.

"Consider all of the circumstances to which I have called your attention, and the others in evidence, and say whether or not the railroad company did knowingly create a condition there which constituted a lure, attracting children into a place of unknown or unappreciated danger. If it did not, if it was not such a place, if it was not such a lure or trap, then without further consideration of the other facts in the case you should find for the defendant."

ant's premises upon an implied invitation, because of alluring conditions. In those jurisdictions it would not be strictly accurate to tell the jury the deceased was a trespasser, and then immediately thereafter leave it to the jury to determine whether defendant had invited him to enter upon the premises by creating alluring conditions with a concealed danger or peril. After the judge had charged as stated in the margin, counsel for defendant asked him to charge "that the only negligence that would make the defendant responsible would be willful, wanton, or reckless negligence." The court thereupon said:

"I think I have in substance so charged. Of course, the negligence must be willful. If the conditions were such as I have described—that is, if there was some lure or trap that was willfully or recklessly maintained there— then the defendant company would have violated its duty. That is true. If not, it would not have violated its duty."

The jury in the instant case was instructed to apply the rule of willful negligence as alone making defendant liable, whether the deceased was on the premises as a trespasser, or whether he was there upon invitation implied by law because of the "lure," if the jury should find that there was a "lure." Whether the defendant would have been liable if it negligently, but not willfully, maintained the "lure," is a question upon which different courts might arrive at different conclusions, according as they thought or did not think the doctrine of the turntable cases applicable to the particular facts herein involved. Whether that doctrine is applicable to the facts of this case is a question which we do not find it necessary to determine, for reasons soon to be mentioned.

In the Century Dictionary the word "reckless" is defined as meaning "desperately heedless." In the New Standard Dictionary the term is defined as "destitute of heed or concern for consequences; especially, foolishly heedless of danger, headlong; rash; desperate." In Gustafson v. Chicago, R. I. & P. Ry. Co., 128 Fed. 85, an allegation is made that an engineer "carelessly, negligently, and recklessly" disregarded and ran by signals. The court said that the term "recklessly," thus employed, was tantamount to an allegation that it was a wanton disregard of all consequences, and would warrant the jury in awarding exemplary damages. In Walsh v. United States, 174 Fed. 615, 618, 98 C. C. A. 461, the Circuit Court of Appeals for the Seventh Circuit quotes approvingly the language of Judge Archbald in his concurring opinion in Lear v. United States, 147 Fed. 359, 77 C. C. A. 537, saying: "A reckless act, moreover, is always regarded as the equivalent of a willful one." In Harrington v. Los Angeles Ry. Co., 140 Cal. 514, 74 Pac. 15, 63 L. R. A. 238, 98 Am. St. Rep. 85, the terms "recklessly" and "wantonly" were regarded as synonymous. So they were also regarded in Bussey v. Charleston & W. C. Ry., 75 S. C. 116, 55 S. E. 163, and in Crosby v. Seaboard Air Line Ry., 81 S. C. 24, 61 S. E. 1064. In Pegram v. Seaboard Air Line Ry. Co., 139 N. C. 303, 51 S. E. 975, 4 Ann. Cas. 214, it is declared that the word "reckless" means more than carelessness—it implies willfulness. In Bailey v. North Carolina R. Co., 149 N. C. 169, 62 S.

E. 912, it is said that the word "recklessly," when used with "wantonly," is the legal equivalent of willful misconduct and intentional wrong. In Kansas Pacific Railway Co. v. Whipple, 39 Kan. 531, 541, 18 Pac. 730, 735, the court said:

"There is a distinction between ordinary negligence and recklessness, or wantonness, as defined in our decisions. * * * In popular use and by our decisions 'recklessness' and 'wantonness' are stronger terms than mere or ordinary negligence."

This distinction is again stated by the same court in Chicago, R. I. & P. Ry. Co. v. Lacy, 78 Kan. 622, 97 Pac. 1025.

[6] Negligence is the omission to take the care which under the circumstances of the particular case a reasonable and prudent person would take. Davidson Steamship Co. v. United States, 205 U. S. 191, 193, 27 Sup. Ct. 480, 51 L. Ed. 764. The failure to exercise such care imposes liability. It is a maxim of the law that one must so use and enjoy his property as to interfere with the comfort and safety of others as little as possible, consistently with its proper use. The failure to observe it in respect to those who have a right to invoke its protection is a breach of duty and constitutes negligence. If the defendant ought reasonably to have anticipated that children would be likely to resort to this particular place to play, and, if they did, that they would be likely to be injured, it was guilty of negligence in maintaining the place in its exposed state. It is sufficient to authorize a recovery in cases of this nature if it appears that cautionary measures of a reasonable character would have prevented the injury complained of, and that such measures were not taken by defendant. Erickson v. Great Northern R. Co., 82 Minn. 60, 84 N. W. 462, 51 L. R. A. 645, 83 Am. St. Rep. 410; Edgington v. Burlington, etc., R. Co., 116 Iowa, 410, 90 N. W. 95, 57 L. R. A. 561; Chicago, etc., R. Co. v. Krayenbuhl, 65 Neb. 889, 91 N. W. 880, 59 L. R. A. 920; Bridger v. Asheville, etc., R. Co., 27 S. C. 456, 3 S. E. 860, 13 Am. St. Rep. 653; 20 R. C. L. 88.

Whether the instructions, in the form in which they were given, were erroneous or not, we do not find it necessary to determine; for, even if error in the instructions occurs, a case is not reversed when the court can see that the error is harmless. It is obvious, therefore, that the question for this court to consider, and it is the only question which we decide, is whether there was testimony in the case from which a jury might rightfully conclude that the defendant was guilty of negligence. If no such testimony is in the record, the interests of the appellant have not been prejudiced. We do not think, upon the evidence, that there was any testimony of defendant's negligence to go to the jury. Where there is uncertainty as to the existence of negligence, whether the uncertainty arises from a conflict in the testimony, or whether, the facts being undisputed, fair-minded individuals can honestly draw different conclusions from them, the question is for the jury. Davidson Steamship Co. v. United States, 205 U. S. 187, 192, 27 Sup. Ct. 480, 51 L. Ed. 764; Richmond & Danville Railroad Co. v. Powers, 149 U. S. 43, 45, 13 Sup. Ct. 748, 37 L. Ed. 642. We find no conflict in the testimony, and the undisputed facts are not such

that fair-minded persons can honestly draw different conclusions from them. In all cases of this kind the character of the instrumentality by which the injury complained of was received, and as to whether it can be said to possess a quality which would be likely to attract or prove tempting to children, as well as its accessibility or nonaccessibility to children, must be considered in determining the question of defendant's negligence; and under the circumstances existing in this case we think it can be said as matter of law that no negligence on the part of defendant appears. It had no reason to anticipate that the deceased would do what he did—climb up the abutment of the bridge, some 20 feet or more, carrying a paint can, and then get down into a hole under the screen, and finally reach out 29 inches and touch with a tin can the feed wire which supplied electricity in the operation of defendant's trains. His extraordinary act was not one that defendant could be expected to have foreseen, and which it could have anticipated. If a verdict had been rendered in favor of the plaintiff, we should have felt it to be our duty to have reversed the judgment.

For that reason the judgment is affirmed.