THE CONSOLIDATED CITY & CHELSEA PARK RAILWAY COMPANY v. JOHN CARLSON, *Administrator*.

### No. 9579.

1. WANTON NEGLIGENCE — *on facts, court refuses to declare as matter of law motorneer not guilty of.* The court will not declare, as a matter of law, that a motorneer in charge of a car on an electric street railway, who propels it at the rate of about twelve miles an hour over a street-crossing adjacent to a large public-school building, when the street is filled with children just leaving school, who fails to ring the bell nearer to the crossing than 150 feet, and who neglects to keep watch of the track ahead of him, is not guilty of gross and wanton negligence.

2. CONTRIBUTORY NEGLIGENCE — *on facts, court refuses to declare ten-year old boy guilty of culpable.* Nor will the court declare, as a matter of law, that a boy ten years old, who crosses a street-car track in a crowd of school children just released from school, is culpably negligent because he fails to see a street car, which, without the ringing of any bell, or other warning, is coming toward him at a high rate of speed.

3. ——— *for jury, on facts, to determine degree of care required by child.* It is for the jury to determine, from all the evidence as to his capacity, and the facts of the case on trial, what degree of care and prudence may be reasonably exacted of a child of tender years.

Error from Wyandotte District Court.   Hon. Henry L. Alden, Judge.   Opinion filed April 10, 1897.   *Affirmed.*

*Miller & Morris* and *Pratt, Dana & Black*, for plaintiff in error.

*McGrew, Watson & Watson*, for defendant in error.

ALLEN, J.  I.  This action was brought by John Carlson, as administrator of the estate of Victor Carlson, deceased, against the Consolidated City & Chelsea Park Railway Company, a corporation operating a street railway in Kansas City, Kansas, to recover damages for negligently causing the death of Victor Carlson.  The trial resulted in a verdict and judgment for the plaintiff for $4,134.  The place where the injury was inflicted was at the intersection of Shawnee and Fifth Streets.  The defendant's road was operated by electricity.  The car which struck Victor Carlson was passing east on the south track of the line of road on Shawnee Street, which runs east and west.  There was a large public-school building on the south side of Shawnee and west side of Fifth Street, which Victor Carlson, a boy lacking one day of being ten years of age, was attending.  Soon after the close of school on the fifth of February, 1892, as the children were crossing the streets, going in various directions, a car on the defendant's road, going at the rate of ten or twelve miles an hour, struck this boy, and so injured him that he died in a few hours thereafter.  At the conclusion of the plaintiff's testimony, a demurrer thereto was interposed by the defendant.

It is now argued that there was no proof of culpable negligence on the part of the defendant, and that the deceased negligently caused his own death by attempting to cross the track immediately in front of the moving car.  It is urged that the boy went suddenly upon the track as the car was approaching; that the motor-

neer had no reason to anticipate that he would do so ; that there is no proof that the speed at which the car was moving was unlawful, and that the injury resulted solely from the carelessness of the deceased. In answer to a special question, the jury found that the defendant was guilty of gross negligence. There is evidence in the record supporting this finding. The operation of cars on a street railway must be with reference to other lawful uses that are made of the street. The children had a right to leave the school building and, in going to their homes, cross the street on which the car tracks were located. It appears that a large number of children were in the street at the time this car came along. While most of them were not standing on the track for any length of time, they were crossing and re-crossing ; some of them playing ; and one girl in particular was standing on one of the rails at about the time this boy was struck. A motorneer in charge of a street car may not lawfully propel it into

1. Court will not declare motorneer not negligent.

a crowd of children, or of grown people either, at such rate of speed as to seriously endanger persons on or about the track. It would be difficult to conceive a more reckless act than that of driving a street car at the rate of twelve miles an hour into a swarm of school children just as they are leaving school. This would be so even if the bell were continuously sounded. In this case, it appears that the bell was rung at the alley, about 150 feet away from the boy, but several of the children, who were near him, testified that they did not hear it. There is also testimony tending to show that the motorneer was not keeping watch of the track in front of him, but that his attention appeared to be directed to one side. All these circumstances taken together, were ample to warrant the jury in finding that he was guilty of gross negligence amounting to wantonness.

II. There was evidence tending to show some negligence on the part of the boy. It is probable that had he watched for cars he might have seen this one. But we are not prepared to say, as a matter of law, that, when in a crowd, playing with other children in a manner quite natural after the day's confinement in a school room, he was bound to watch for a car driven as recklessly as this one appears to have 2. Contributory been. He had a right to rely on the exercise of some degree of care in the operation of cars on the tracks; and the court properly submitted to the jury the question whether, under the circumstances, he was guilty of culpable negligence. The special findings of fact are not inconsistent with the general verdict, but, so far as they go, uphold it.

III. Complaint is made of various instructions. In the third, the jury were told, among other things, that they might consider "the speed at which the car was running at the time; what the person in charge of the car was engaged in doing at the time; the age and discretion of the parties, and all other facts disclosed by the evidence." This is criticized by counsel, who ask,— "With no other evidence before them, how could the jury determine that any particular speed was negligence on the part of the defendant at the time of the accident?" It was within the province of the jury to consider the speed at which the car was moving as one of the circumstances in the case bearing on the question of negligence. It was not necessary that any witness should have expressed an opinion that the speed was excessive, nor was it incumbent on the plaintiff to show any ordinance, rule, or regulation prescribing a less rate of speed. Whether it was proper under the circumstances to allow the car to run so fast, was a matter within the legitimate

province of the jury to determine. Though counsel is very emphatic in condemning that part of the instruction which informs the jury that they may consider what the person in charge of the car was engaged in at the time, we see nothing whatever objectionable in it. That also was a circumstance in the case. The grossest conceivable negligence might exist merely from neglect by the motorneer of his proper duties while intent on something entirely foreign to them. The concluding clause of this instruction reads as follows: "A minor who has not arrived at the. years of discretion and judgment, cannot be held to as high degree of care and prudence as a person of mature judgment and discretion, and should be required to exercise a degree of prudence and care commensurate with his or her age, knowledge and experience." Language of similar import occurs in other instructions.

In answer to the seventh question submitted, the jury found that Victor Carlson was of sufficient age and knowledge to know the danger of placing himself on the track in front of the car. It is contended that it was error for the court to submit this question to the jury; that it should have been determined as a matter of law whether the boy was of such age as to be responsible for his conduct. We know of no precise age at which a child may be said, as a matter of law, to have acquired such knowledge and discretion as to be fully accountable for all his acts. As a matter of fact, we know that there is great difference in the capacity of different children at the same age, owing as well to differences in education and surroundings as to natural capacity. The question as to the capacity of a particular child at a particular time to exercise care in avoiding a particular danger, is one of fact, falling

3. Degree of care required a matter for jury.

within the province of the jury to determine. *Brown v. Sherer*, 29 N. E. Rep. (Mass.) 50. It was held in the case of *K. P. Rly. Co. v. Whipple* ( 39 Kan. 531 ), that "the rule of law in regard to the negligence of an adult, and the rule in regard to that of an infant of tender years are quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. If he fails to give it, his injury is the result of his own folly, and cannot be visited upon another. Of an infant of tender years, less discretion is required, and the degree depends upon his age and apparent knowledge." See also *Avery v. Galveston, H. & S. A. Rly. Co.*, 81 Tex. 243; 17 S. W. Rep. 31; *Texas & P. Rly. Co. v. Hall*, 83 Tex. 675; 19 S. W. Rep. 121. A part of the eighth instruction, which is especially criticized, reads as follows :

"If the jury find by a preponderence of the evidence that the employee of said defendant in charge of the car in question saw, or by the exercise of reasonable care would have seen, the said Victor Carlson upon the track in front of such car, or so near the track that it was apparent that said car could not pass without striking him, in sufficient time to have stopped said car and avoided a collision with said Victor Carlson, and that said person in charge of said car failed and neglected to exercise reasonable care and attention, either by running said car at a high rate and reckless rate of speed, or in attempting to stop said car, but ran the same against and upon said Victor Carlson, and by reason of such negligence on the part of the person in charge of said car, the said Victor Carlson was injured, from the effects of which he died, then the plaintiff is entitled to recover herein all such damages as the evidence shows have been sustained by the said John Carlson and Hildah Carlson as the next of kin of said deceased, by reason of the death of said Victor Carlson, as hereinafter stated.

The fact that the said Victor Carlson carelessly put himself in the place of danger would not excuse the defendant Company for recklessly or wantonly injuring him."

In commenting on this instruction, it is said there was no evidence showing that Victor Carlson was so near the track that it was apparent the car could not pass without striking him. We think the instruction is subject to criticism, because it confines the inquiry to the question whether the motorneer could have seen that he was likely to strike this particular boy. The real culpability arises from the fact that there were many children in proximity to the track, and it was incumbent on the motorneer to look out for the safety of all of them. If Victor Carlson was hidden from the view of the motorneer by other children, his negligence in propelling the car at a dangerous rate of speed through the crowd was not less than if the boy had been in full view. The reasonableness of the conduct of the motorneer is to be determined, not alone from the liability to inflict injury on this particular boy, but from the liability to hurt others as well. Had this boy been alone in an unfrequented part of the street, quite a different case would have been presented, to which the instruction given would have been more nearly applicable than to the case on trial. The defendant has no valid ground for complaining of this instruction ; the error embraced in it being in the defendant's favor. The ninth instruction, with reference to the measure of damages, appears to us unexceptionable ; and we cannot say, as a matter of law, that the verdict is excessive. The contention that it is a quotient verdict is not sustained by the record. While the jurors did set down separate sums, add them, and divide the amount by twelve, the quotient was not agreed on as the verdict, but a slightly larger

sum. Several ballots were taken after the figures were made, and it was not at any time agreed that the quotient should be the verdict.

We find no material error in the record, and the judgment is affirmed.