W. P. BIGGS, *Administrator of the estate of Leigh Walter
Howell, deceased*, v. THE CONSOLIDATED BARB-WIRE
COMPANY.       No. 11070.

1. NEGLIGENCE—*Dangerous Machinery—Minors.*   The mainte-
nance of dangerous machinery on private grounds, unprotected
from the visits of trespassing children, renders the owner thereof,
who has knowledge that children and others are accustomed to
frequent said grounds and climb upon the structures supporting
said dangerous appliances, liable in damages to the next-of-kin of
a boy fourteen years of age who was caught in said exposed ma-
chinery and killed.

2. ——— *Question for Jury.*   In this case, the question whether
the boy was of sufficient intelligence, natural capacity, foresight
and judgment to be guilty of contributory negligence was for the
jury.

3. ——— *Case Followed.*   The case of *Price v. Water Co.*, 58
Kan. 551, 50 Pac. 450, followed.

Error from Douglas district court; SAMUEL A. RIGGS,
judge.   Opinion filed February 11, 1899.   Reversed.

*R. E. Melvin*, for plaintiff in error.

*W. W. Nevison*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : This was an action for the recovery of damages by reason of the death of Leigh Walter Howell, which was caused, as is alleged, by the wrongful act, neglect and default of the defendant in error, the Consolidated Barb-Wire Company. On December 2, 1897, an amended petition was filed in the cause, to which a general demurrer was interposed by the defendant. This demurrer was sustained by the court, and the plaintiff below electing to stand thereon, judgment was rendered in favor of the defendant. The question for our consideration is whether the amended petition states facts sufficient to constitute a cause of action.

It is alleged in said amended petition that the plaintiff, W. P. Biggs, on July 26, 1897, was duly appointed administrator of the estate of Leigh Walter Howell, deceased ; that the defendant is a corporation and had for a long time operated a wire-nail and barb-wire plant on the south bank of the Kansas river at Lawrence ; that said plant is run by water power, and that the power is transmitted to said wire mill and plant about 125 feet by a certain shaft owned and controlled by the defendant ; that said shaft is about six inches in diameter, and is located about fifteen or eighteen feet above the water, supported on timbers which are about eighteen inches apart, said timbers being supported by a stone buttress or pier ; that about twelve or eighteen feet west of said buttress or pier is a collar or coupling about eight inches in diameter around said shaft, and in the outer rim of

said collar or coupling is a bolt or set-screw which pro-
jects out some four or five inches from the outer rim
of the collar or coupling ; that the shafting and con-
nections and attachments are open and exposed
and in no manner covered or .enclosed ; that the
shaft revolves at the rate of about 100 to 150 revo-
lutions per minute ; that on the 21st day of April,
1897, said Leigh Walter Howell was fishing and play-
ing near to and under said shaft, and in attempting to
climb up from below, on a ladder for that purpose
built by the defendant, to the timbers on either side
of said shaft, the aforesaid bolt or set-screw which pro-
jected from the collar or coupling on said shaft caught
in the back of his coat, and he was whirled around said
shaft and against said timbers with irresistible force
and killed ; that the wire company was guilty of gross
carelessness toward the deceased in that, through its
officers, it had actual notice of the faulty construction
of said machinery, and that at the place of the acci-
dent it was unsafe and dangerous ; that it was guilty
of gross carelessness toward the deceased in not en-
closing or boxing the collar, coupling, and screw, and
in leaving the same exposed and open, and further in
allowing the set-screw or bolt to project four or five
inches from the rim of the collar or coupling, and in
not boxing it; and was careless in leaving the ma-
chinery and timbers supporting the same, and the
immediate surroundings, which were attractive to
children, open and exposed, wholly unguarded and
unfenced ; that the deceased could not see the bolt or
set-screw by reason of the shaft revolving so fast as to
render it invisible ; that the place where plaintiff's
intestate was killed and the machinery and timbers
supporting the same and the surroundings were
attractive to children ; and that children, and particu-

larly boys, were in the habit of resorting there for the purpose of amusement, and men and boys were in the habit of climbing about on the timbers which supported the shaft for the purpose of fishing and playing, and that the company had notice of such facts ; that the defendant company knew that the said machinery was unsafe and dangerous, for the reason that other persons had been caught by said screw ; that said shaft is built across what would be New Hampshire street, if projected ten feet into the water ; that said dangerous machinery was left in an open and exposed place, unfenced and unprotected, and in a place attractive to children ; that at the time of the accident, April 21, there were no sign-boards on or about said premises, but previous to that time there had been, and the same had been put up and erected by defendant company, but that since April 21 the defendant had placed and erected danger-boards on and around said premises ; that Leigh Walter Howell, the deceased, was a boy of fourteen years of age, intelligent, healthy and promising at the time of his death ; that he left a father, brother and sister surviving him.

All the allegations of the petition being admitted, together with such facts as are properly inferable from the language used, we are unable to perceive that they demand the application of any different rule than that heretofore adopted and adhered to by this court in cases substantially similar. The structure erected and maintained by the wire company was of such a nature as to be attractive to children, especially to boys. It was situated in a place about which boys and men congregated for the purpose of amusement, and boys were in the habit of climbing about on the timbers that supported the shaft for the

purpose of fishing and playing, of which fact the wire company had actual notice.  At the top of the structure was a collar or coupling in which was a set-screw projecting four or five inches from the outer rim of the coupling.  When in motion this collar or coupling and the set-screw revolved at the rate of from 100 to 150 revolutions per minute, by reason of the velocity of the shaft, so that the screw was invisible. There was a ladder extending to the top of the structure upon which the boy climbed until, when near the top, he was caught in the back of the coat by this revolving set-screw which projected from the collar, and, being whirled round the shaft and against the timbers, he was killed.

The case of *Price v. Water Co.*, 58 Kan. 551, 50 Pac. 450, is an authority directly in point.  In that case the boy drowned in the reservoir of the water company was bright and intelligent.  He was a trespasser on the grounds of the water company.  The grounds about the reservoirs were enclosed with a barb-wire fence ten to twelve wires high.  The deceased entered the enclosure by climbing over a stile. The watchman of the water company was aware of the habit of boys to climb over the stile, and permitted them to do so without objection.  The boy went with some companions to the reservoir to fish and play, and, venturing upon an "apron" which extended from the bank out into one of the reservoirs, was drowned.  His parents had frequently warned him of the danger of going to the reservoir, and he had trespassed there once before without their knowledge. In the Price case, as in the case at bar, two grounds of error were urged : (1) That the defendant was not negligent in maintaining the premises ; (2) that the deceased was guilty of contributory negligence.  The

two grounds were disposed of by this court in an opinion reviewing the authorities. Among other things the court said :

"It is, however, contended by the defendant in error that, inasmuch as the deceased was a trespasser upon its grounds, it owed to him no duty to guard against the accident which occurred. Without doubt, the common law exempts the owner of private grounds from obligation to keep them in a safe condition for the benefit of trespassers, idlers, bare licensees, or others who go upon them, not by invitation, expressed or implied, but for pleasure or through curiosity. Cool. Torts ( 2d ed.) 718 ; 1 Thompson, Negl. 303 ; *Dobbins v. M. K. & T. Rly. Co.*, 91 Tex. 60, 41 S. W. 62. The common law, however, does not permit the owner of private grounds to keep thereon allurements to the natural instincts of human or animal kind without taking reasonable precautions to insure the safety of such as may be thereby attracted to his premises. To maintain upon one's property enticements to the ignorant or unwary is tantamount to an invitation to visit, and to inspect and enjoy ; and in such cases the obligation to endeavor to protect from the dangers of the seductive instrument or place follows as justly as though the invitation had been express."

The court quotes approvingly from the case of *K. C. Rly. Co. v. Fitzsimmons*, 22 Kan. 692, when passing on the question of contributory negligence of the deceased.

"Boys can seldom be said to be negligent when they merely follow the irresistible impulses of their own natures — instincts common to all boys. In many cases where men, or boys approaching manhood, would be held to be negligent, younger boys, and boys with less intelligence, would not be. And the question of negligence is in nearly all cases one of fact for the jury, whether the person charged with negligence is of full age or not."

See, also, *Kinchlow v. Elevator Co.*, 57 Kan. 374, 46 Pac. 703 ; *Railway Co. v. Carlson*, 58 id. 62, 48 Pac. 635.

From the peculiar character of the structure upon which the plaintiff's intestate was killed, and its proximity to the water of the Kansas river, it certainly presented to the average boy a desirable place from which to fish, and considering the inbred disposition and ever present impulse in children, especially boys, to explore and investigate, this structure over the water appealed strongly to such natural inclination. The wire company had notice that this structure was used by men and boys as a fishing platform ; and having this notice, it was a question for the jury to say whether it was negligent in maintaining it in its condition at the time of the accident. The death of the plaintiff's intestate was directly caused by the revolving set-screw attached to the coupling on the shafting which was supported by the upright timbers. Its velocity was so great that neither a boy of fourteen nor a man of mature years could have seen it. Except for the projecting pin on said coupling the appliance would probably have been safe and no harm would have resulted to the boy. It was not boxed or covered.

It is contended by the defendant in error that the prior decisions of this court above cited are not precedents in the case at bar for the reason that in none of them has a boy of the age of fourteen years been held incapable of knowing the consequences of his acts. We cannot say, as a matter of law, at what age a boy would be possessed of such intelligence, foresight and judgment as to charge him with contributory negligence in a case like the present. It is peculiarly within the province of the jury to determine such questions. In the Carlson case, *supra*, it is said :

"As a matter of fact, we know that there is great difference in the capacity of different children at the

same age, owing as well to differences in education and surroundings as to natural capacity. The question as to the capacity of a particular child at a particular time to exercise care in avoiding a particular danger, is one of fact, falling within the province of the jury to determine.''

The judgment of the court below will be reversed, with instructions to overrule the demurrer to the petition.