[Civ. No. 2861.   Third Appellate District.—May 28, 1925.]

## CAROLINE GREENEICH, Respondent, v. JACOB KNOLL, Appellant.

[1] NEGLIGENCE—DAMAGES FOR DEATH OF MINOR—PROXIMATE CAUSE OF ACCIDENT—INSUFFICIENT LIGHTS ON TRUCK—EVIDENCE—VERDICT.—In this action for damages for the death of a minor child, who was killed while riding a bicycle along a public highway, it was within the province of the jury to accept the evidence to the effect that defendant's truck was being driven at a high rate of speed, over a slippery road, on a dark and rainy night, with front lights so dim that they would not reveal objects more than ten feet ahead, and, such being the facts, the driver of defendant's truck was grossly negligent, and it could not be successfully maintained that such negligence was not a proximate cause of the accident; and, conceding that the truck was so controlled that it could not exceed a speed of fifteen miles per hour, the failure to "carry at the front at least two lighted lamps . . . sufficient to reveal any person, vehicle or substantial object on the road straight ahead for a distance of seventy-five feet or over," as required by the Motor Vehicle Act, was negligence per se.

[2] ID.—ABSENCE OF LIGHT AND REFLECTOR ON BICYCLE—CONTRIBUTING CAUSE OF ACCIDENT—EVIDENCE—INFERENCES—VERDICT.—Conceding that the deceased did not carry a lighted lamp on the front of his bicycle, as required by the Motor Vehicle Act, it could not be said, as a matter of law, that the absence of such front light in any manner contributed to the accident resulting in his death; and, in view of the fact that the lights on defendant's truck were insufficient to reveal an object on the road more than ten feet ahead, the jury was warranted in drawing the inference that, if deceased had

2.   Duty of bicyclist to carry lights, note, 47 L. R. A. 295.

had a reflex mirror at the rear of his bicycle, the reflected light therefrom would not have been visible to the driver of defendant's truck in time to avoid the accident, and if it would not have been so visible, the absence of such reflex mirror was not a contributing cause of the accident.

[3] ID. — AGE OF MINOR — CONTRIBUTORY NEGLIGENCE — PROVINCE OF JURY.—In such an action, in determining whether the deceased was guilty of contributory negligence, the jury had the right to take into consideration his age and mental capacity—there being no precise age at which, as a matter of law, a child is to be held accountable for all his actions the same as one of full age.

[4] ID.—DEATH OF MINOR—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS— EVIDENCE—VERDICT—APPEAL.—In this action for damages for the death of a minor child, who was killed while riding a bicycle along a public highway, on a dark and stormy night, without any lights or any reflex mirror at the rear, the question of contributory negligence of the deceased having been submitted to the jury in accordance with defendant's theory of the case, and upon instructions framed by his counsel, and the evidence having been sufficient to support the implied finding of the jury in plaintiff's favor upon that issue, the verdict was conclusive on appeal.

[5] ID.—INSTRUCTIONS—REPETITION.—In such action, it was not error to refuse to instruct the jury, at the request of defendant, that "Before you would be justified in rendering a verdict in favor of the plaintiff in this case you must be convinced by a preponderance of the evidence, first, that the defendant's employee was guilty of negligence in the equipment or operation of the truck in question at the time and place mentioned in the complaint, and, second, that such negligence was the proximate cause of the injuries complained of," where every proposition of law contained in such refused instruction was repeatedly stated in other instructions given.

(1) 28 Cyc., p. 47, n. 17 New.   (2) 28 Cyc., p. 38, n. 27.   (3) 29 Cyc., p. 536, n. 56.   (4) 4 C. J., p. 858, n. 3.   (5) 38 Cyc., p. 1911, n. 17.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jacobs & Jacobs and Frank A. Henning for Appellant.

3.  Contributory negligence of children, notes, 1 Ann. Cas. 895; 17 Ann. Cas. 353; Ann. Cas. 1913A, 177; Ann. Cas. 1913B, 969.

4.  Age at which doctrine of contributory negligence may be applied to children, note, L. R. A. 1917F, 42, 84. See, also, 14 Cal. Jur. 134.

Steele & Gannon for Respondent.

FINCH, P. J.—Plaintiff, a widow, sued to recover damages for the death of her minor son, alleged to have been caused by the negligence of the defendant. She was given judgment and the defendant has appealed.

Respondent objects to the consideration of the evidence on the ground that appellant's request for a transcript thereof was not filed in time. To uphold the contention would be to affirm the judgment, no error appearing upon the face of the judgment-roll. A decision of the question, however, is unnecessary, as the judgment must be affirmed on the merits.

Plaintiff's son was of the age of thirteen years and eleven months and was in the eighth grade of the elementary schools. He was in charge of a newspaper route and during the evening of December 9, 1922, he was engaged in delivering papers to residents along Cherokee Lane, a paved highway running in a southerly direction from the town of Lodi. He was riding a bicycle without a light or reflex mirror, the light which he had been accustomed to use being then in a repair-shop. The evening was rainy and the pavement was wet and slippery.

Shortly before 6 o'clock of the same evening the defendant's son, of the age of twenty years, was driving one of defendant's trucks in a northerly direction along Cherokee Lane. The truck, which was of two and a half tons carrying capacity, was loaded with about 130 empty grape boxes, the weight of the truck and boxes being 7,000 pounds. It was equipped with presto headlights and kerosene dashlights. The gas supply of the headlights became exhausted during the trip and only the dashlights were burning at the time of the accident. The driver of the truck and a boy of the age of eleven years were seated in the cab, which was entirely inclosed, except that the windshield was open to give a better view of the road ahead. An automobile was following the truck at a distance estimated by the witnesses to be from 50 to 100 feet therefrom. Another automobile was traveling south along the same road. When these two automobiles were about opposite each other a loud crash was heard and two of the empty boxes fell off the truck. The

truck continued along the road to the north, but the two au-
tomobiles at once came to a stop. The body of plaintiff's
son was found lying on the east half of the pavement, the
skull and face so crushed as to cause instant death, several
teeth lying on the pavement, and blood flowing from the
crushed head. The broken bicycle, which evidently the boy
had been riding, was lying near the body. "The body was
lying just a trifle further north than the bicycle and the
boxes were on further than that, about . . . three or four
feet." A witness who was sitting in his house 237 feet dis-
tant from the scene of the accident, with the doors and win-
dows closed, testified that he heard the crash, that "it was
a quick crash." None of the occupants of the two automo-
biles saw the boy prior to the accident. Defendant's son
and the boy with him testified that they did not see the boy
or his bicycle at any time. The driver of the automobile
which had been going south followed and passed the truck
after the accident, alighted from his machine and signaled
the driver of the truck to stop, but the latter continued to
go north. The driver of the machine again followed and
passed the truck and succeeded in halting it near the edge
of the town of Lodi. He testified that he asked defendant's
son "if he realized . . . he had run over a boy and killed
him"; that defendant's son replied, "No, if anybody run
over a boy and killed him, you did. . . . Ask the little boy
if we run over anybody"; and that the little boy said, "No,
we didn't run over anybody." C. R. Fisher, a deputy
sheriff and traffic officer of San Joaquin County, testified
that he tested the dashlights on the truck two days after
the accident; that at the time the test was made it was a
very dark night and not raining; that the lights were so
dim that, sitting in the driver's seat, with the windshield
open, he could not see a man standing in front of the ma-
chine at a greater distance than about ten feet. The de-
fendant's son testified that at the time the test was made
the lights were in the same condition as they were at the
time of the accident. The driver of the automobile which
was following the truck immediately before the accident tes-
tified that he had been traveling between twenty and twenty-
five miles an hour, that when he saw the truck he slowed
down to between sixteen and twenty miles an hour and that

the truck "got ahead of me, that is, further than it was."
He also testified that his lights were good, that they showed
"the truck up plainly," that he saw the sides of the truck
and underneath it and that he did not "see any object along
the side of the truck or underneath it or anywhere around
it." The driver of the truck, the defendant's son, testi-
fied that he could see the road clearly for forty or fifty feet
ahead of the truck, that he watched the road "all the time,"
that he did not see a boy "on a bicycle or otherwise," that
he was not traveling over fifteen miles an hour, and that the
truck did not run over anything. A witness for the de-
fendant testified that the speed limit of the truck is eighteen
and a half miles an hour.

[1] Appellant contends that the evidence is insufficient
to support the implied finding of the jury that the defend-
ant's negligence was the proximate cause of the death of
plaintiff's son, that if the "boy was killed by the motor-
truck of defendant at all there were only two possible ways
in which it could have been done. One is on the theory
that he was towing at the side of the truck, and his bicycle
slipped on the wet and slippery pavement and threw him
under the truck, and the right hand wheel ran over his
head. . . . The other would be on the theory that the
Greeneich boy, just before the accident, was riding in front
of the truck." In support of the verdict it must be pre-
sumed that the jury found that the boy was not towing
at the side of the machine. The driver of the automobile
which was following the truck testified that his lights showed
"the truck up plainly," that he saw the sides of the truck
but did not see "any object along the side of the truck . . .
or any where around it." Adopting the only other theory
suggested by appellant, the negligence of the driver of the
truck is clearly proved. It was within the province of the
jury to accept the evidence which was most favorable to the
plaintiff. From such evidence it appears that the heavy
truck was being driven at a high rate of speed, over a slip-
pery road, on a dark and rainy night, with front lights
so dim that they would not reveal objects more than ten
feet ahead. If such were the facts, then the driver of the
truck was grossly negligent. If it be inferred, contrary to
the evidence, that the motor-truck was "so governed or

mechanically constructed or controlled that it cannot exceed a speed of fifteen miles per hour," the Vehicle Act in force at the time of the accident required the truck to "carry at the front at least two lighted lamps which . . . shall be sufficient to reveal any person, vehicle or substantial object on the road straight ahead for a distance of seventy-five feet or over." (Stats. 1919, p. 207.) The violation of the statute was negligence *per se.* It cannot be successfully maintained that such negligence was not a proximate cause of the accident.

[2] It is urged that the deceased was guilty of contributory negligence "in not having a light or reflex mirror on his bicycle." During the period from a half hour after sunset to a half hour before sunrise, "every bicycle while on the public highway shall carry a lighted lamp visible under normal atmospheric conditions at least three hundred feet in the direction toward which such bicycle is faced, and shall also carry at the rear of such bicycle a reflex mirror or a lighted lamp exhibiting a red light plainly visible under normal atmospheric conditions for a distance of at least two hundred feet toward the rear." (Stats. 1919, p. 207.) The foregoing provisions do not require that the front light of a bicycle shall be sufficient to reveal persons or objects on the road ahead, as in the case of motor vehicles. If the front light of a bicycle is itself visible from a point 300 feet ahead, it complies with the law, even though it may reveal no part of the road or objects thereon or be visible from the rear. It cannot be said, therefore, as a matter of law, that the absence of a front light on the bicycle in any manner contributed to the accident. It would have been a sufficient compliance with the law to carry a reflex mirror at the rear of the bicycle, its evident purpose being to reflect the light from motor vehicles approaching from the rear and thereby give the drivers of such vehicles warning of the presence of the bicycle on the road. If the lights on the motor-truck were insufficient to reveal an object on the road more than ten feet ahead, it is not probable that a reflex mirror at the rear of the bicycle would have served to prevent the accident. Granting that the reflection of the light from the motor-truck upon a reflex mirror could be

seen at a greater distance ahead than a person or other object on the road, it cannot be held that the jurors were not warranted, in view of the dim lights on the truck, in drawing the inference that such reflected light would not have been visible to the driver of the truck in time to avoid the accident. If it would not have been so visible, then the absence of a reflex mirror was not a contributing cause of the accident. The court, at defendant's request, instructed the jury that if the deceased did not carry lights or a reflex mirror, in accordance with the law as herein stated, he was guilty of negligence, and that "if you believe from the evidence in this case that the death of the said Alvin F. Greeneich was proximately caused by or resulted from such negligence then you must render a verdict in favor of the defendant."

[3] This discussion has proceeded upon the theory that the deceased was of such age as to be held accountable for his conduct to the same extent as one of full age. In determining whether the deceased was guilty of contributory negligence, the jury had the right to take into consideration his age and mental capacity. "There is no precise age at which, as a matter of law, a child is to be held accountable for all his actions to the same extent as one of full age. (*Consolidated etc. Ry. Co.* v. *Carlson*, 58 Kan. 66 [48 Pac. 635].) In that case it is said: 'The question as to the capacity of a particular child at a particular time to exercise care in avoiding a particular danger, is one of fact, falling within the province of a jury to determine.'" (*Cahill* v. *Stone & Co.*, 153 Cal. 571, 577 [19 L. R. A. (N. S.) 1094, 96 Pac. 84]; *Mayne* v. *San Diego Electric Ry. Co.*, 179 Cal. 173, 177 [175 Pac. 690].) [4] At defendant's request the court instructed the jury as follows: "It is the law that such a boy is required to exercise such an amount of care as is in accord with his maturity, experience, and capacity as he travels on a public highway, and that amount of care so to be exercised by him is to be determined by the jury upon the proof of all the facts and circumstances in the testimony; but there is no presumption that such a boy has not the ability to exercise some amount of care as he travels on or uses a public highway. It was, therefore, incumbent

upon said Alvin F. Greeneich . . . to use such care and caution as a reasonably prudent person of the age, capacity, and experience of said Alvin F. Greeneich would reasonably be expected to exercise and use under the circumstances at the time he met his death, considering the amount of traffic on said highway and the condition of the weather and highway at such time. A failure to exercise such a degree of care will be deemed negligence and if you find from the evidence in this case that the said Alvin F. Greeneich was guilty of negligence and that such negligence was the proximate cause of his death, then I instruct you that plaintiff cannot recover.'' It thus appears that the question of contributory negligence was submitted to the jury in accordance with defendant's theory of the case and upon instructions framed by his counsel. The evidence is sufficient to support the implied finding of the jury upon that issue and the verdict is conclusive on appeal.

[5] Appellant complains of the court's refusal to give the following instruction: ''Before you would be justified in rendering a verdict in favor of the plaintiff in this case you must be convinced by a preponderance of the evidence, first, that the defendant's employee was guilty of negligence in the equipment or operation of the truck in question at the time and place mentioned in the complaint, and, second, that such negligence was the proximate cause of the injuries complained of.'' In other instructions the court told the jury that the plaintiff must prove her case by a preponderance of the evidence, defining that term; that ''to constitute actionable negligence there must be causal connection between the negligence complained of and the injury suffered, and for the negligence to be the proximate cause of the injuries there must first appear that it was a duty owing from the defendant to the plaintiff, second, that it was a negligent breach, third, that the injuries resulted as a direct consequence of such breach''; and that negligence, ''however illegal, in the absence of evidence showing it to have been a proximate cause of the injury complained of, furnishes no legal ground for complaint.'' Other instructions of similar import were given. It thus appears that every proposition of law contained in the refused instruc-

tion was repeatedly stated in other instructions, and it was not necessary to further repeat the same.

The judgment is affirmed.

Shields, J., *pro tem.*, and Plummer, J., concurred.

Appellants' petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 27, 1925.

All the Justices concurred.