[Civ. No. 4415.   Third Appellate District.—November 16, 1931.]

MURRAY CLARK, a Minor, etc., Respondent, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation), Appellant.

Thomas J. Straub and W. R. Dunn for Appellant.

. E. S. Mitchell for Respondent.

Roy V. Reppy and E. W. Cunningham, *Amici Curiae.*

PLUMMER, J.—The plaintiff had judgment in the sum of $4,250 for and on account of damages alleged to have been suffered by reason of coming in contact with a high-powered electric transmission line, negligently maintained by the defendant. From this judgment the defendant appeals, and also from an order denying defendant's motion for judgment in its favor, notwithstanding the verdict.

The complaint alleges that on the third day of May, 1929, the defendant was maintaining a power transmission line suspended on poles, in and over the Cutten-McDonald tract, near or adjacent to the city of Eureka; that the volume of electricity carried in said line amounted to about 2,300 volts; that upon the poles the defendant caused steps to be maintained from the top thereof to within a few feet of the ground (the testimony showing about 18 inches); that said steps were maintained contrary to an order of the railroad commission known as and called "General Order 64–A"; that the order referred to became effective March 1, 1929, and specifies that the lowest step on any pole supporting an electric power line shall not be less than 7 feet 6 inches from the ground. It is further alleged in the complaint that the defendant so negligently maintained the pole involved in this action, and carelessly and recklessly maintained the steps thereon so as to become attractive to children, and in such a manner as to constitute an invitation to children to climb thereon, to the danger of said children's lives. It is further alleged that no provisions were made to safeguard and prevent children from climbing the pole involved in this action, or to advise them of the danger thereof, and that the pole was maintained as an attractive nuisance. It is further alleged that on the third day of May,

1929, the plaintiff, a minor of the age of twelve years, at that time, while playing with other children, was attracted by the steps on said pole line and climbed from the ground to the top thereof, seizing one of the wires on said pole conducting electricity as aforesaid; that the plaintiff was severely injured, to his damage in the sum of $15,000.

In the second count contained in plaintiff's complaint, after alleging the negligent maintenance of the poles and of the steps, as herein referred to, that the plaintiff, a minor of the age of twelve years, on the third day of May, 1929, was playing on the streets of said Cutten-McDonald tract, and observing the invitation of the defendant in so equipping said high-powered line, and not knowing the danger thereof, and not knowing that said line was a high-powered line or dangerous, the plaintiff being attracted thereto, climbed said pole on the steps provided for that purpose, and accidentally seized a line on such pole then conducting 2,300 volts, and was greatly shocked and injured, etc.

The answer denies the allegations of the complaint, save and except that it admits the maintenance of the power line and the steps thereon.

The appellant summarizes the facts as follows: "Defendant is shown to have maintained, along and inside of the right of way line of a public street in the city of Eureka, and alongside the block where the plaintiff had lived for 9 years, a pole line consisting of wooden poles carrying electric light and power wires. (Just how long the line had existed does not appear.) On the pole involved there were three lag screws on one side, beginning 12 inches from the ground, and so spaced that they might be used for steps climbing to a regular step 80 inches from the ground. From thence, steps continued to the top of the pole 35 feet from the ground, where there was a single crossarm carrying wires. At the time of the accident plaintiff was 12 years and 9 months of age, 5 feet tall; he had been warned by his father not to climb the poles because of the danger that existed in high-powered electric currents. Plaintiff had been warned by other boys to watch out for the wires. At the time of the accident, the plaintiff and several other boys were playing 'cowboy and Indian', and desired to place a can upon the pole and use it as a signal. Joe, a brother of the plaintiff, went up the pole first to attach the signal, and

then came down, and afterwards Murray went up. Murray went up the pole to place the can at a higher place. It appears that on the top of the pole there was a spike or nail inserted. According to the testimony of some of the witnesses the plaintiff was elected to climb the pole, as the one 'that mostly does all the dangerous work'. The plaintiff climbed the pole, using the lag screws as steps. The plaint'ff picked out the pole in question because it was easy to climb. Plaintiff climbed to the top of the pole and sat astride of the crossarm, with one leg on each side of the tip of the pole where it extended above the crossarm."

The record further shows that as the plaintiff was going to tie a string fastening the can to the nail on the top of the pole, he started falling backward and grabbed hold of one of the wires to keep himself from falling, testifying that he was not thinking of the danger. In this manner the plaintiff was injured. The plaintiff further testified that he saw steps on the pole and saw that it was easy to climb.

The cause appears to have been tried on the "attractive nuisance" doctrine that the steps maintained by the defendant constituted an invitation for boys to climb thereon, and that the steps, or spikes answering the purpose of steps, were maintained in violation of General Order No. 64–A of the Railroad Commission. The pole in question was maintained by the defendant on a public street or highway, and therefore all cases dealing with private premises upon which poles are erected are inapplicable to any of the issues involved herein. Both the plaintiff and the defendant had equal rights to be upon the public highways, and the trepass, if any, as claimed by the defendant, could only consist in the climbing of the pole.

Upon this appeal the defendant urges that there is no evidence that the defendant knew or had reason to believe that the pole constituted a dangerous attraction to children; that there is no evidence that the pole was novel or uncommon to the plaintiff, etc.; that the evidence fails to bring the plaintiff within the class designated as of tender and immature years, etc.; that the danger could not have been remedied easily as to boys of plaintiff's age and size; and finally, that the evidence shows that plaintiff was injured as a result of the common and usual risk and hazards, etc. It

is further urged that the court erred in its instructions to the jury.

The rule as to the character of instrumentality is thus stated in 19 California Jurisprudence, page 625 et seq.: "An owner of a thing dangerous and attractive to children is not always and universally liable for injury to a child tempted by the attraction. His liability is said to bear a relation to the charactor of the thing, whether natural and common, or artificial and uncommon, and to the comparative ease or difficulty of preventing the danger without destroying the usefulness of the thing. Liability attaches only when the contrivance is novel in character, and is of such a nature as to virtually constitute a trap into which children, because of their ignorance and inexperience, are led, for it is the duty of parents to warn their children, and children are presumed to know, of common dangers existing in the order of nature. . . . It is an essential ingredient of an action based upon the attractive nuisance doctrine that a child should be attracted to the premise by a natural curiosity and desire to play upon or with the contrivance. . . . However, liability is not imposed in all cases merely because a thing is attractive to children; it must also be novel in character, dangerous, easily guarded and rendered safe, and the one having control of the apparatus must be under an affirmative duty to prevent children from playing thereon. It is for the jury to determine whether an instrumentality is attractive to children, and whether or not an owner is obliged to guard against injuries to trespassing children." And further: "In order that an owner of an attractive and dangerous instrumentality be held liable it must be shown that he knows, or as a reasonably prudent man ought to know, of the dangerous character of the contrivance. . . . The attractive nuisance doctrine applies only where the instrumentality which causes the injury is some novel and dangerous appliance, the consequences of meddling with which are not fully comprehended by infant minds." All of these propositions involve questions of fact as well as of law. Thus, it is for the jury to determine whether the instrumentality is attractive to children. It is likewise a question of fact whether the danger could have been easily guarded against. It is also a question of fact whether the method of construction was new or novel, and a question of fact whether

the spikes placed upon the pole in question, from a few inches above the ground to the top thereof, constituted a virtual invitation to boys to climb thereon; and it is a question of fact, also, as to whether the defendant ought to have reasonably anticipated the danger of making it readily accessible for boys to climb up the pole in question. The rule in this particular we think applies to the present case just as in the case of *Cahill* v. *Stone & Co.*, 153 Cal. 571 [19 L. R. A. (N. S.) 1094, 96 Pac. 84], where, in considering a complaint based upon attractive nuisance, approval is given to the decision in the case of *Barrett* v. *Southern Pacific Co.*, 91 Cal. 302 [25 Am. St. Rep. 186, 27 Pac. 666], where it is said: "If defendant ought reasonably to have anticipated that leaving this turn-table unguarded and exposed, an injury such as plaintiff suffered was likely to occur, then it must be held to have anticipated it, and was guilty of negligence in thus maintaining it in its exposed position. . . . A child of immature years is expected to exercise only such care and self-restraint as belongs to childhood, and a reasonable man must be presumed to know this and required to govern his actions accordingly." In the opinion in the Cahill case the court further said (quoting from *Consolidated Ry. Co.* v. *Carlson*, 58 Kan. 66 [48 Pac. 635]): "The question as to the capacity of a particular child at a particular time, to exercise care in avoiding a particular danger, is one of fact, falling within the province of a jury to determine." And quoting with approval from the case of *Biggs* v. *Consolidated Wire Co.*, 60 Kan. 217, 223 [44 L. R. A. 655, 56 Pac. 4], where it is said: "We cannot say as a matter of law, at what age a boy would be possessed of such intelligence, foresight and judgment as to charge him with contributory negligence." (The boy in that case was fourteen years of age.)

In the case of *Nicolosi* v. *Clark*, 169 Cal. 746 [L. R. A. 1917F, 638, 147 Pac. 971], the danger was open and apparent, to wit, a cellar from which the building had been removed, and into which the plaintiff was pushed in a fit of anger by a younger brother.

In *Wallace* v. *Great Western Power Co.*, 204 Cal. 15 [266 Pac. 281], where a boy had climbed an electric pole where there were no steps provided for climbing the same, but ascent was made by "shinnying" up one of the vertical

supports until a horizontal brace was reached which was 8 feet from the ground, the court, in sustaining a motion for a nonsuit, used the following language: "In determining this question (the contributory negligence of the plaintiff), it may be conceded that the question of contributory negligence, especially where the evidence is in any material degree conflicting, is a question of fact for the jury, and it may also be conceded that the question as to whether children of the age of 14 years or younger, have been guilty of contributory negligence in relation to the instrumentality which has caused their injury or death, it is as a general rule, a question of fact for the jury. The determination of this question, however, depends upon what the evidence discloses as to the degree of intelligence of the minor, and as to his opportunity for knowing or being aware of the danger which attends his coming or bringing himself in contact with such dangerous instrumentalities or agencies as are high-powered electric wires. . . . The trial court was still in a position, upon motion for nonsuit, to determine from all the circumstances of the case whether the deceased boy, though a minor, was sufficiently intelligent and sufficiently familiar with the dangers incident to contact with high-powered electric wires that his action in ascending this tower by the difficult means of ascent afforded and to the height and place of danger to which he did thus succeed in climbing, was to be held guilty of negligence as a matter of law." This case further shows, as we have stated, that no steps were provided for ascending the tower; it was not in a public highway, though it appears that it was in an open space where people occasionally congregated.

In the instant case it is conceded that the spikes or steps upon which one might climb in ascending the pole were maintained in contravention of a rule or regulation or order of the Railroad Commission. Such act constitutes negligence *per se*.

In the case of *Howell* v. *San Joaquin Light & Power Co.*, 87 Cal. App. 44 [261 Pac. 1107], this court had occasion to consider the question of a violation of an order of the Railroad Commission relative to the height at which power lines should be suspended, and there held that a failure to comply with the order of the Railroad Commission constituted negligence. The holding of this court is supported

by a large number of cases there cited showing that the rule is firmly established.

In the case of *Minter* v. *San Diego Cons. Gas & Elec. Co.*, 180 Cal. 723 [182 Pac. 749], relied upon by appellant, it was held that a corporation maintaining an electric power line strung upon wooden poles along a public highway in a country district, one wire being strung at a height of about 27 feet from the ground, and at about 14 or 16 inches from a tree in front of the plaintiff's premises, and another wire 8 feet higher and at a distance from the tree of about 3 feet, was not bound to anticipate that children might be attracted to climb into the tree where they might be endangered by the wires. The tree in this case, however, was about 3 feet in diameter and the first limb over 6 feet from the ground, and for a considerable distance between the lower branches and the defendant's wire the tree was practically bare of limbs. These facts we think render the holding in that case inapplicable here.

The facts in the case of *Howard* v. *Transmission Co.*, 316 Mo. 317 [49 A. L. R. 1034, 289 S. W. 597], distinguished it from the case at bar. In the Howard case the defendant corporation was maintaining a high-power line suspended on poles along the margin of a highway close to a stream used by boys in swimming and fishing. The pole was without any attachments to make climbing easy. Under these circumstances it was held that the defendant was not liable. The opinion in the Howard case takes up the cases having to do with poles upon which climbing attachments or contrivances are installed, and thus points out the distinguishing facts. In our investigations, however, we find two cases supporting the appellant's contention, save and except that the maintenance of the poles involved was not violative of any order, ordinance or statute rendering the manner of maintenance negligence *per se*.

In the case of *State* v. *Trimble*, 316 Mo. 32 [49 A. L. R. 1047, 285 S. W. 455], it was held: "A pole carrying electric wires placed in the parkway between the roadway and the sidewalk of a public street is not an attractive nuisance which will render the Electric Company liable for injury to a child climbing it, by reason of the fact that it contains climbing steps beginning so close to the ground as to be easily reached by children." It was further held

that a bright, intelligent boy fourteen years old, doing well in school, living in the city, was guilty of negligence in attempting to climb a pole carrying a dangerous current of electricity, especially where he was warned of the danger before reaching the wire. In discussing the evidence in that case the court said: "There is no testimony in the record showing that the pole as it existed, presented an attractive lure to boys to climb or to play upon." And further, that the evidence shows that boys did not climb such poles, or at least that the boys in the neighborhood were not in the habit of doing so. In the instant case the testimony is to the effect that boys did climb the poles. It may be remarked that the opinion further shows that the dangers attending the climbing of the pole in that case were quite forcibly called to his attention while he was climbing upon the pole, the testimony showing that another boy had thrown a rock at him in an endeavor to cause him to desist from his climbing enterprise.

In the case of *Reddy* v. *City of Watertown*, 53 S. D. 347 [220 N. W. 851], it was held by the Supreme Court of North Dakota that the city was not liable in maintaining an electric transformer and choke coil on a pole 20 feet above the ground, and that a boy who climbed the pole and grasped the choke coil, which was uninsulated, was guilty of contributory negligence. The boy in that case was fourteen years of age. There were spikes driven into the pole, the lowest one being 32 inches from the ground, the others 18 inches apart. These spikes enabled workmen to climb the pole to a platform upon which a transformer was placed. At the conclusion of the testimony the trial court directed the jury to find a verdict in favor of the defendant, and the judgment based thereon was affirmed. It may be further stated the facts show that in order to reach the platform where the boy was injured, he had to crawl through a very small hole in the platform upon which the transformer was placed, showing it was a question of fact as to whether the dangerous instrumentality was readily accessible.

As against the authorities relied upon by the appellant are several well-considered cases which we think establish the true rule, especially in view of the fact that the act of the defendant in violating General Order No. 64–A of the Rail-

road Commission must be held negligence *per se,* which distinguishes the questions we are considering upon this appeal from the cases relied upon by the appellant.

In *Robertson* v. *Rockland Light & Power Co.,* 187 App. Div. 720 [176 N. Y. Supp. 281], the facts show that there were two poles in close proximity, one of which carried a telephone line, the other an electric power line. The poles were unguarded; were equipped with steps just as in the case at bar. The boy climbed the telephone pole and crossed over to the electric power pole standing near it, and was injured. The power company was held liable. Appellant claims that the holding in this case is overruled by the case of *Parkes* v. *New York Telephone Co.,* 120 Misc. Rep. 459 [198 N. Y. Supp. 698], which went to the court of appeals and was affirmed. Here, again, the case is readily distinguishable from the case at bar. It appears that what was called a ''bos'n'' chair was left attached to cables on a telephone pole. A boy climbed to the chair, and was precipitated to the ground. The chair was being used by workmen, and about 5 P. M. of the day on which the accident occurred, was anchored on one of the cables about 4 or 5 feet from the telephone pole. After the men had left, two or three fifteen year old boys came along, climbed the pole, untied the rope which had been left on the pole, and swung back and forth on the rope, and a younger boy came along, reached out and swung on the rope, and as a part of his play, voluntarily dropped to the ground. The court held, as we have stated, that the defendant was not liable, and in so doing said: ''The defendant must not be cast in damages unless it appears that the appliance attracted children; that it was inherently dangerous, or led or directed the child into or upon another object inherently dangerous; and that the defendant knew, or ought to have known both of these things.'' All of which are different from the facts involved in the Robertson case, and also different from the facts involved in the instant case, as we are dealing with an instrumentality inherently dangerous and, at the same time, an instrumentality that *appears* to be entirely harmless, electricity being *felt,* not *seen.*

In *Znidersich* v. *Minnesota Utilities Co.,* 155 Minn. 293 [193 N. W. 449], it was held that the rule of liability for

maintaining dangerous instrumentalities attractive to chil-
dren applies to the maintenance of poles on public highways,
carrying electric power lines, where the poles are equipped
with permanent contrivances serving the purposes of a
ladder for climbing the same, and being out in the open
and no way guarded or otherwise protected from free inter-
ference by children and others. In that case, just as in
this, the pole was equipped with spikes, so arranged as
to make climbing the pole an easy matter. A twelve
year old boy climbed to the top of the pole to disengage
the strings of a kite which had fallen over one of the
wires, and in disengaging the string, was injured by com-
ing into contact with a power wire. The court said:
"The facts bring the case within the rule applied by the
prevailing weight of authority, that one who keeps and
maintains upon his premises, dangerous instrumentalities
or agencies likely to attract children of tender years, in
play, or permit such conditions to remain thereon with
the knowledge that children are in the habit of resorting
thereto for amusement and pastime, is liable to a child
who is injured." It was further said that the appliance
involved in that case was upon a public street, and not
upon private property; was at a point readily accessible
to children. After citing a number of cases relating to
trespassers, the court said: "The differentiating element is
found in the fact that the child injured has as much right
in the street where the alluring instrumentality is main-
tained, as the owner thereof, thus removing in a substantial
way the element of unquestioned trespass necessarily pre-
sented where private property and premises are invaded."
(Citing *Barrett* v. *Village of Princeton,* 135 Minn. 56 [160
N. W. 190].) "The only element of trespass in the case
where a public street is thus occupied, is found in the
technical wrong of the child in attempting to play with
the offending attraction. And that act the jury may
excuse, in the particular case, depending upon the alluring
character of the article and the age and discretion of the
child, with less hesitation perhaps than where there has
been an actual invasion of the enclosed premises of another."

In *McKiddy* v. *Des Moines Elec. Co.,* 202 Iowa, 225 [206
N. W. 815], the Supreme Court of Iowa, in a well con-
sidered case, held the defendant liable where the testimony

showed that the company erected a pole bearing a large number of wires carrying an electric current of high voltage, on land adjoining a city park, with no warning sign, as required by ordinance, and no fence around it, but with spikes driven in it which were means of climbing to the wires. This case is identical with the case at bar. There, the company violated an ordinance in relation to the maintenance of the pole. Here, the defendant violated an order of the Railroad Commission, which had power to direct and prescribe the method of maintenance, to wit, that there should be no steps or climbing spikes within 80 inches of the ground.

Again, in *Talkington* v. *Washington W. & P. Co.,* 96 Wash. 386 [165 Pac. 87], the Supreme Court of Washington had occasion to consider the questions here presented, and held the defendant liable. In the opinion in that case a number of instances are cited where power wires were strung through or near trees of the kind that boys would be inclined to climb, in which cases the power company was held liable. It was further held that the question of contributory negligence of the boy involved was for the jury. It was further held that the owner of such a contrivance must be presumed to know of the tendency of boys to climb trees and poles.

In the recent case of *Cooper* v. *North Coast Power Co.,* 117 Or. 652 [244 Pac. 665, 245 Pac. 317], the Supreme Court of Oregon went into the subject of the negligence of a defendant in maintaining an electric power line, and it was held, among other things, that the question of contributory negligence of the boy involved was for the jury. (The boy was twelve years of age.) The opinion in the Cooper case is replete with citations supporting the rule that one maintaining a highly dangerous instrumentality, readily reached by climbing a tree or a pole, must be held to have knowledge of the tendency of boys to climb trees and poles—in that case a tree. The Cooper case also contains an answer to the appellant's contention that the primary and inducing cause of the plaintiff's injury in this action was his falling backward. In the Cooper case the boy had climbed a tree and came in contact with the wires. The opinion in the Cooper case cites other cases showing instances where boys had climbed trees and were injured

by reason of the breaking of the branches, causing the boys to come in contact with the wires suspended through the trees.

Again, the case of *Robertson* v. *Rockland Light & Power Co.*, *supra*, shows that the teacher of the school where the injured boy attended, had warned the children of the danger of coming in contact with the wires, and had warned them not to climb the pole. Nevertheless, it was a question of fact for the jury as to whether the injured boy understood the danger to which he was exposed. In the Parkes case, *supru*, had the telephone wire been a high-power electric wire, it would have been a fact for the jury whether the company should have been charged with knowledge, or should have been held to have reasonably anticipated that children would climb the pole and come in contact with the death-dealing current. It was the boy's voluntary act in that case which caused his injury, and not the negligent maintenance of conditions which might allure a small child to come in contact with a wire carrying a high voltage of electricity.

In *Heller* v. *New York, N. H. & H. Ry. Co.*, 265 Fed. 192 [17 A. L. R. 823], a case relied upon by the appellant, the circumstances show that it could not have been reasonably anticipated by the defendant that boys would climb to the heights which was done in that case, and come in contact with an electric wire.

In *Stedwell* v. *City of Chicago*, 297 Ill. 486 [17 A. L. R. 829, 130 N. E. 729], it was held that a municipal corporation which places a defectively insulated electric wire in such close proximity to a latticed pillar erected in a highway to support an electric railway, as to be dangerous to children who, following their instincts of play, may climb the pillar and come in contact with the wire, is liable. It was further held that it was a question for the jury to determine whether the latticed pillar was so attractive to children as to suggest the possibility of accident to one placing a wire near the top of the pillar. The annotations to this case, as found in 17 A. L. R., *supra*, are replete with cases adjudging the liability of a defendant, constructing wires, under circumstances similar to those presented upon this appeal.

In *Thompson* v. *City of Slater*, 197 Mo. App. 247 [193 S. W. 971], an eight year old boy was injured by coming in contact with an uninsulated wire extending through a tree, when the limb above the wires upon which the boy was sitting broke, causing him to come in contact with one of the wires.

In *Benton* v. *North Carolina Public-Service Co.*, 165 N. C. 354 [81 S. E. 448], the defendant was held liable where it strung high power wire through the limbs of a tree. The lower limbs of the tree in question were 7 feet from the ground. It was held that the boy climbing the tree was not a trespasser.

In *Wolfe* v. *Ford*, 7 Ohio App. 461, it was held the defendant was liable for injury to an eleven year old boy who in playing climbed a tree and came in contact with a wire. In that case stress was laid upon the fact that the wire was not properly insulated.

Appellant calls our attention to the case of *Bradley* v. *Thompson*, 65 Cal. App. 226 [223 Pac. 572], where a boy had trespassed upon the premises of the owner, took a dynamite cap from an open box, exploded it, and was severely injured. Upon these facts the court held the defendant not liable. In this connection we may call attention to the case of *Town of Depew* v. *Kilgore*, 117 Okl. 263 [246 Pac. 606], where it was held by the Supreme Court of Oklahoma that a child between the ages of seven and fourteen years is presumed incapable of more than a technical trespass as affecting the duty of owner of premises; that the duty of the owner of premises in guarding against danger is commensurate with the character of the instrumentality, appliance or object upon the premises. It was further held that in the handling and keeping of dynamite caps, to protect children from danger, the utmost care was required. In that case the municipality using dynamite caps left them in an exposed position near a sidewalk used by children. One of the boys passing by picked up one of the caps, caused it to be exploded, was injured thereby, and the defendant was held liable.

From what we have said it clearly appears that both the Reddy and Trimble cases, *supra*, are against the great weight of authority and are furthermore readily distinguishable from the case at bar in that the violation of no order,

ordinance or statute regulating the construction of electric power lines was involved. Again, it must be presumed that the defendant had knowledge of General Order No. 64–A of the Railroad Commission, which imparted knowledge of the fact of the inherent danger of placing spikes or steps upon poles carrying high-power electric lines, and of the allurement that would thereby be created for children with propensity to climb.

Appellant further urges as ground of reversal the refusal of the court to give certain requested instructions. and also in giving certain instructions. As to the instructions asked for by the defendant and refused, it is sufficient to say that most of them are not correct statements of the law, and in so far as they contain correct statements of the law, they are covered by the instructions given by the court to the jury. Particular objection is made to the following instruction, to wit: "The right of the plaintiff to recover damages in this case is dependent upon the negligence of the defendant. The negligence of the defendant if any, may be either the acts or omissions of the defendant or its agents and servants while in the course of their employment, or a violation of a statute, rule or ordinance which proximately caused the injury, if any, complained of. Proximate cause is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces injury and without which, the injury would not have occurred. The efficient cause mentioned above is the one that necessarily sets the other cause in motion; the cause without which an injury would not have occurred. If the defendant was negligent, either through the acts and conduct of itself, its employees or its agents in the course of agency and employment or by violation of a rule of the Railroad Commission, and such negligence was the proximate cause of the injury to plaintiff, then plaintiff is entitled to recover for the injury sustained, if any." The contention being that no reference is made in this instruction, to the contributory negligence of the plaintiff.

Objection is also made to instruction No. 20, which reads: "I instruct you that if you find that defendant violated General Order No. 64–A of the Railroad Commission and that such violation thereof proximately caused the injury, and that the doctrine of attractive nuisance applies as

herein instructed thereon, and that plaintiff exercised such care as an ordinary child of like years would under like circumstances, then I instruct you plaintiff is entitled to a verdict for damages at your hands, if he has suffered injury.''

Instruction No. 23 told the jury that the child involved in this action was bound to exercise such care as children of his age would ordinarily exercise; and further, that if the jury found from the evidence that at the time Murray Clark climbed the pole, he knew of the danger attendant upon contact with the wires thereon, the verdict should be for the defendant.

The court further instructed the jury that if it found that Murray Clark failed to exercise the care of an ordinarily prudent boy of his age and experience, under the same or similar circumstances, in climbing the pole and bringing himself in contact with the wires, and that if the plaintiff exercised such care he would not have been injured by contact with the wires, that the verdict should be for the defendant.

The cases which we have cited heretofore in this opinion relative to the law applicable, show that the instructions given to the jury are in strict accord therewith, and do not require further consideration.

Some contention is also made that counsel for the plaintiff was guilty of prejudicial misconduct in his opening statement. The length of this opinion already precludes any detailed mention of this objection. It was a reference to, in substance, the wealth of the corporation and the poverty of the plaintiff, the court promptly stating that testimony to that effect was inadmissible, and no testimony was offered.

While there is some conflict in the cases cited, we think that the weight of authority supports the judgment in this case, based upon the fact that an unseen danger, the presence of which can only be ascertained by an act which renders knowledge of its presence of no avail, demands great care and caution on the part of those maintaining such instrumentalities in order that the lives of children may not be destroyed. A consideration of the injuries sustained by the plaintiff, without reciting them, shows that the verdict is not excessive.

The order denying defendant's motion for judgment, notwithstanding the verdict, and the judgment are affirmed.

Preston, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 16, 1931, and the following opinion rendered thereon:

THE COURT.—■ Appellant again contends that there was no testimony showing the date of the construction of the pole involved in this action, and therefore that General Order 64–A of the Railroad Commission did not apply, and that the trial court and this court were both in error in assuming that it did.

A consideration of the pleadings which was given in the first instance, and are now referred to, shows that the appellant's contention is untenable, as only one question in relation to the pole was tendered, to wit: Whether the steps on the pole were lower than 7 feet, and were down to within 3 feet of the ground. The allegations of the complaint in paragraph IV are as follows: "That said defendant caused steps to be maintained on said poles from the top to within 3 feet of the ground, the first step being less than 3 feet, contrary to General Order 64–A of the Railroad Commission and contrary to all rules of safety and carefulness; that General Order 64–A, effective March 1, 1929, issued by the Railroad Commission, provides that for any overhead line constructed conducting electricity, the lowest step on any step-pole shall not be less than 7 feet 6 inches from the · ground, and a space between steps on the same side of the pole shall not exceed 36 inches, which said General Order or rule was well known to the defendant herein." The appellant's answer reads as follows: "Answering the allegations contained in ˙Paragraph IV of the plaintiff's first cause of action, said defendant denies that it caused steps to be maintained on any part of said pole from the top to within 3 feet of the ground, and in this connection defendant alleges that the lowest step on each of said poles was placed and maintained at least 7 feet above the ground and in substantial com-

pliance with the said General Order 64–A of the Railroad Commission referred to in said complaint.''

It will thus be seen that no issue was tendered by the denials of the appellant as to the application of General Order 64–A of the Railroad Commission, and the only testimony required on the part of the plaintiff was to show that the steps on the pole came down below the prohibited distance from the ground, and within 3 feet thereof, as alleged.

The petition for rehearing is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 14, 1932.